SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

ALEX KRIEGSMAN
alex.kriegsman@usdoj.gov
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: 202-305-3022
Facsimile: 202-305-0506

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARTHA MAYNOR, LESTER LOCKLEAR, ALFORD MAYNOR, VONDOLA LOCKLEAR, ROY MAYNOR, SKAROREH KATENUAKA NATION, aka TUSCARORA NATION OF INDIANS OF NORTH CAROLINA ) ) ) ) ) ) ) | Civil No. 1:06-CV-00612  Hon. Richard W. Roberts |
| Plaintiffs, ) | |
| v. ) ) | |
| ) | **DEFENDANT'S MOTION TO DISMISS** |
| SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, ) ) ) | |
| Defendant. ) | |

Defendant United States Department of the Interior, by and through its undersigned counsel, hereby move this Court for an Order dismissing the Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12 (b)(1) and 12(b)(6). The grounds for Defendant's Motion are that:

1.  Plaintiffs' claims are not within the subject matter jurisdiction of this Court.

2.  Plaintiffs' Complaint fails to state any claim upon which relief can be granted.

In support of this Motion, Defendant submits the accompanying Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss.

WHEREFORE, the Defendant respectfully requests that the Motion to Dismiss be granted, Plaintiffs' Complaint be dismissed with prejudice, and judgment be entered in favor of Defendant.


June 30, 2006                                        Respectfully submitted,




                                                    SUE ELLEN WOOLDRIDGE
                                                    Assistant Attorney General
                                                    Environment and Natural Resources Division

                                                    _____/s/Alex Kriegsman_____
                                                    ALEX KRIEGSMAN
                                                    Trial Attorney
                                                    Natural Resources Section
                                                    Environment and Natural Resources Division
                                                    U.S. Department of Justice
                                                    P.O. Box 663
                                                    Washington, D.C. 20044
                                                    Tel.:(202) 305-3022
                                                    Fax:    (202) 305-0506




OF COUNSEL:

JASON C. ROBERTS
Attorney- Advisor
U.S. Department of the Interior
Office of the Solicitor
Division of Indian Affairs
1849 C Street, N.W., MS 6513
Washington, DC 20240
Tel.:    (202) 208-6526
Fax:    (202) 219-1791                          Attorneys For Defendant


1

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARTHA MAYNOR, LESTER LOCKLEAR, ALFORD MAYNOR, VONDOLA LOCKLEAR, ROY MAYNOR, SKAROREH KATENUAKA NATION, aka TUSCARORA NATION OF INDIANS OF NORTH CAROLINA | ) ) ) ) ) ) | Civil No. 1:06-CV-00612 Hon. Richard W. Roberts |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL FRAMEWORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    General Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.    Indian Reorganization Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

C.    Lumbee Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

D.    Maynor v. Morton . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A.    This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Complaint Because
       Plaintiffs Do Not Have Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B.    Plaintiffs' Failure to Properly Allege a Waiver of Sovereign Immunity Warrants
       Dismissal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

C.    Plaintiffs' Claims Are Barred by the Statute of Limitations. . . . . . . . . . . . . . . . 12

D.    To the Extent that Plaintiffs Allege a Claim Against the United States for Recognition
       as an Indian Tribe, That Claim Should be Dismissed as a Non-Justiciable Political
       Question. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

E.    Plaintiffs' Claims for Money Damages Exceed the Jurisdiction of this Court. . . . . 13

F.    Res Judicata Bars Plaintiff Roy Maynor's Claims. . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

FEDERAL CASES

Allen v. Wright,

    468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Allen v. McCurry,

    449 U.S. 90 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Baker v. Carr,

    369 U.S. 186 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

Bennett v. Spear,

    520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Brown v. Felsen,

    442 U.S. 127 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Burt Lake Bank of Ottawa and Chippewa Indians v. Norton,

    217 F. Supp. 2d 76 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cherokee Nation of Oklahoma v. Babbitt,

    117 F.3d 1489 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Commissioner of Internal Revenue v. Sunnen,

    333 U.S. 591 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Crisafi v. Holland,

    655 F.2d 1305 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Department of Army v. Blue Fox, Inc.,

    525 U.S. 255 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Dynaquest Corp. v. United States Postal Service,

    242 F.3d 1070 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Estelle v. Gamble,

    429 U.S. 97 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Floyd v. District of Columbia,

      129 F.3d 152 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Gibbs v. Buck,

      307 U.S. 66 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Harris v. F.A.A.,

      353 F.3d 1006 (D.C. Cir.), cert. denied, 125 S.Ct. 34 (2004) . . . . . . . . . . . . . . . . . 14

Health Equity Res. Urbana, Inc. v. Sullivan,

      927 F.2d 963 (7th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Independent Petroleum Ass'n of America v. Babbitt,

      235 F.3d 588 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

James v. United States Dep't of Health and Human Servs.,

      824 F.2d 1132 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13, 15

Kahawaiolaa v. Norton,

      386 F. 3d 1271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kidwell v. Dep't of Army, Bd. for Correction of Military Records,

      56 F.3d 279 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Kokkonen v. Guardian Life Ins. Co. of Am.,

      511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Kowalski v. Tesmer,

      543 U.S. 125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Loeffler v. Frank,

      486 U.S. 549 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lujan v. Defenders of Wildlife,

      504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Masayesva v. Zah,

      792 F. Supp. 1178 (D. Ariz. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Maynor v. Morton,

      510 F.2d 1254 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 10

Miami Nation of Indians of Indiana, Inc. v. United States Dep't of the Interior,

    255 F.3d 342 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Moore v. Agency for Int'l Development et al.,

    994 F.2d 874 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Morton v. Mancari,

    417 U.S. 535 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Neitzke v. Williams,

    490 U.S. 319 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Paley v. Estate of Ogus,

    20 F. Supp. 2d 83 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Peter Kiewit Sons' Co. v. United States Army Corps. of Eng'rs,

    714 F.2d 163 (D.C.Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Powers v. Ohio,

    499 U.S. 400 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rice v. Cayetano,

    528 U.S. 495 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Shoshone Bannock Tribes v. Reno,

    56 F.3d 1469 (D.C.Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tri-State Hosp. Supply Corp. v. United States,

    341 F.3d 571 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Trifax Corp. v. District of Columbia,

    314 F.3d 641 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. 43.47 Acres of Land More or Less,

    855 F. Supp. 549 (D. Conn. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Antelope,

    430 U.S. 641 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

iv

United States v. Holliday,

    70 U.S. 407, 419 (1865) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Sandoval,

    231 U.S. 28, 47 (1913) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Von Murdock,

    132 F. 3d 534, 539-40 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United Tribe of Shawnee Indians v. United States,

    253 F.3d 543 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,

    454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Warth v. Seldin,

    422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

Waters v. Rumsfeld,

    320 F.3d 265 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16


FEDERAL STATUTES

 U.S.C. § 704. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

25 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 U.S.C. § 479 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25 U.S.C. § 479a-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 U.S.C. § 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 U.S.C. §§ 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

25 U.S.C. §§ 3001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25 U.S.C. §§ 461 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

28 U.S.C. § 1346(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

43 U.S.C. § 1457 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 14

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

70 Stat. 254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pub. L. No. 84–570 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

FEDERAL REGULATIONS

25 C.F.R. Part 83 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 C.F.R. § 83.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25 C.F.R. § 83.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 C.F.R. § 83.5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 C.F.R. §§ 83.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

25 C.F.R. §§ 83.6(c) & 83.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

sections 25 C.F.R. § 83.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## PRELIMINARY STATEMENT

Defendant the United States Department of the Interior respectfully submits this Motion to Dismiss Plaintiffs' Complaint. Plaintiffs, who identify themselves as the "Tuscarora Nation," ask this Court to declare and recognize them as an Indian tribe pursuant to the Indian Reorganization Act. Plaintiffs' Complaint is fatally flawed for several reasons and should be dismissed.

First, the individually named Plaintiffs fail to allege any injury in fact and thus lack standing to bring this action. Second, there is no final agency action and Plaintiffs do not allege any such action. Defendant, thus has not waived its sovereign immunity and dismissal is warranted. To the extent Plaintiffs are asking for federal acknowledgment or recognition as an Indian tribe, their failure to exhaust their administrative remedies also warrants dismissal.

Even if Plaintiffs were to overcome these fatal defects - and they cannot - their claims are barred by the statute of limitations. Also, Plaintiffs seek money damages against the United States that are beyond the jurisdiction of this Court. Finally, Plaintiffs' request that this Court acknowledge them as a tribe is a non-justiciable political question. Accordingly, Plaintiffs' Complaint should be dismissed with prejudice.

## BACKGROUND

Plaintiffs Martha Maynor, Lester Locklear, Alford Maynor, Vondola Locklear, Roy Maynor (the "individual Plaintiffs") and "Skaroreh Katenuaka Nation a/ka Tuscarora Nation of Indians of North Carolina" ("'Tuscarora Nation'") filed this action on March 31, 2006. Compl. Plaintiffs claim to be "Tuscarora Indians" and relatives of Lawrence Maynor, who Plaintiffs allege, was among 22 individuals recognized in 1938 as "half" or more Indian under the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 461 et. seq.. Compl. ¶¶ 2-7, 18. Plaintiffs allege that since 1974, the "Tuscarora Nation" has on several occasions applied to the Secretary of the Interior for federal recognition. ¶ 28. According to the Complaint, in 1987, Lawrence Maynor applied for federal recognition on behalf of the Tuscarora Nation. Id. Plaintiffs further allege that in 1989, the "Assistant Solicitor of the Department of Indian

Affairs of the United States Department of the Interior," wrote to Plaintiff Roy Maynor, informing him that the Bureau of Indian Affairs ("BIA") was not required to take any action with regard to the "Tuscarora Nation." Id.

Plaintiffs seek declaratory judgment, mandamus and an injunction requiring the Secretary of the Interior to recognize the Skaroreh Katenuaka Nation a/k/a Tuscarora Nation of Sovereign Indians of North Carolina. ¶ 1. Plaintiffs also seek an order to show cause why the Secretary should not be held in contempt and damages. Id.

On July 21, 2003, Plaintiff Roy Maynor filed an action in this Court seeking return of lands allegedly set aside for the "Tuscarora Nation," monetary damages, and declaratory judgment "acknowledging [the "Tuscarora Nation's"] right to exist and live 'as we say we are." See Maynor v. U.S., 1:03cv1559 (RWR) ("2003 Complaint"). Attachment A. On July 11, 2005, this Court issued an order dismissing the complaint and entering judgment for the defendants. See Attachment B. On August 12, 2005, this Court denied Roy Maynor's motion to file an amended complaint. See Attachment C. This Court found, inter alia, that amendment would be "futile" because the proposed amended complaint contained the same defects as Maynor's original complaint. This Court found that "the fatal defects pertaining to standing and waiver of sovereign immunity [were] not cured." See id. at 2. On February 9, 2006, Plaintiff Roy Maynor's appeal was denied. See Attachment D. This action followed.[1]

## LEGAL FRAMEWORK

### A.    General Background

Congress has authorized and charged the Department of the Interior (hereinafter "Interior") to administer Indian affairs and, under the President of the United States, to clarify and elaborate departmental authority by regulation. 25 U.S.C. §§ 2, 9; 43 U.S.C. § 1457. Interior is charged with determining what American Indian groups are entitled to be acknowledged as Indian tribes. No statutory directive requires Interior to conduct a process

---

[1]It should be noted that the present Complaint is almost identical to the one for which the proposed amendment was denied as futile. See Attachment E.

2

to acknowledge tribes, but the agency has authority to do so pursuant to several statutes granting Interior general responsibility over matters pertaining to Indians. See 43 U.S.C. § 1457 (charging the Secretary of the Interior with the supervision of public business related to Indians); 25 U.S.C. § 2 (granting management of all Indian affairs to the Commissioner of Indian Affairs under the supervision of the Secretary of the Interior and regulations prescribed by the President); 25 U.S.C. § 9 (authorizing the President to prescribe regulations to carry out statutory responsibilities relating to Indian affairs). See also Miami Nation of Indians of Indiana, Inc. v. United States Dep't of the Interior, 255 F.3d 342, 345 (7th Cir. 2001), 534 U.S. 1129 (2002) (noting that Congress has delegated to President power to acknowledge tribes); James v. United States Dep't of Health and Human Servs., 824 F.2d 1132 (D.C. Cir. 1987); Masayesva v. Zah, 792 F. Supp. 1178 (D. Ariz. 1992).

In 1978, Interior established a regulatory process for the review and approval of petitions for acknowledgment of Indian tribes. See 25 C.F.R. Part 83; see also 43 Fed. Reg. 39361 (1978); 59 Fed. Reg. 9280 (1994). Under the regulations, acknowledgment is granted to Indian groups who can establish a "substantially continuous tribal existence and which have functioned as autonomous entities throughout history until the present." 25 C.F.R. § 83.3(a). Indian groups apply for acknowledgment by filing a "documented petition" that must provide "thorough explanations and supporting documentation" to show that the petitioner meets the seven mandatory criteria set forth in the regulations. See 25 C.F.R. §§ 83(c) & 83.7. A tribe is a political, not a racial classification. Rice v. Cayetano, 528 U.S. 495, 519–22 (2000); United States v. Antelope, 430 U.S. 641, 645–46 (1977); Morton v. Mancari, 417 U.S. 535, 553–55 (1974). A collection of persons of Indian ancestry does not constitute a tribe unless they and their ancestors are part of a continuously existing political entity. 25 C.F.R. § 83.3(a),(c). Interior has the duty of publishing in the Federal Register "a list of all Indian tribes entitled to receive services from the Bureau by virtue of their status as Indian tribes." 25 C.F.R. § 83.5(a); 25 U.S.C. § 479a-1.

**B.     Indian Reorganization Act**

The IRA defines "Indian" as:

> [A]ll persons of Indian descent who are members of any recognized Indian
> tribe now under Federal jurisdiction, and all persons who are descendants of
> such members who were, on June 1, 1934, residing within the present
> boundaries of any Indian reservation, and shall further include all other
> persons of one-half or more Indian blood.

25 U.S.C. § 479.  Among the benefits offered to a nonreservation Indian who could prove that he possessed at least one-half Indian blood "was the right to petition the Secretary to establish a reservation for such individuals, which, if granted, would afford them access to a wide range of federal Indian services (as members of a recognized Indian group on a reservation)."  Maynor v. Morton, 510 F.2d 1254, 1256 (D.C. Cir. 1975).  In 1934, following enactment of the IRA, Plaintiffs' alleged relative, Lawrence Maynor, and others petitioned the Secretary of the Interior for recognition as a person of one-half or more Indian blood.  Id.  Interior informed Lawrence Maynor and another twenty-one individuals that they were entitled to benefits established by the IRA, but such benefits did not include tribal status or any rights or privileges in any Indian tribe, and that such rights did not pass to any descendants.  Id. at 1256–57.

### C.     Lumbee Act

In 1956, the United States passed the Lumbee Act, which provided that "the Indians now residing in Robeson and adjoining counties of North Carolina, originally found by the first white settlers on the Lumbee River in Robeson County, and claiming joint descent from remnants of early American colonists and certain tribes of Indians originally inhabiting the coastal regions of North Carolina" be known as "Lumbee Indians."  Pub. L. No. 84–570, 70 Stat. 254.  Under the Lumbee Act, the Lumbee Indians would "continue to enjoy all rights, privileges, and immunities enjoyed by them as citizens of the State of North Carolina and of the United States as they enjoyed before the enactment of" the Act, but they were not "eligible for any services performed by the United States for Indians because of their status as Indians, and none of the statutes of the United States which affect Indians because of their status as Indians shall be applicable to the Lumbee Indians."  Id.

### D.     Maynor v. Morton

In 1971, Lawrence Maynor, Plaintiffs' alleged relative, and another twenty-one

4

individuals designated as "half" or more Indian petitioned the Secretary of the Interior to establish a reservation for them as certified Indians.  Maynor, 510 F.2d at 1257.  The Deputy Solicitor of Interior determined that the clause concerning eligibility for federal Indian services in the Lumbee Act of 1956 "terminated the rights which the individuals had obtained in 1938 by virtue of their certification as Indians of more than fifty percent blood."  Id.  On review, the Court of Appeals of the District of Columbia determined that the Lumbee Act was not intended to alter any rights the twenty-two individuals acquired as a result being of certified as Indians under the IRA.  Id. at 1259.

## STANDARD OF REVIEW

It is well settled that federal district courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  They may exercise only as much jurisdiction as is granted to them under the Constitution and by Congress.  Id. The plaintiff bears the burden of establishing the federal jurisdiction upon which his suit relies.  Id.  Plaintiffs, therefore, also have the burden of pleading the requisite jurisdictional facts.  See Gibbs v. Buck, 307 U.S. 66, 72 (1939).  A complaint must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction if the action: (1) does not arise under the federal Constitution, law, or treaties, or fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of that section; or (3) the cause is not one described by any jurisdictional statute. See Baker v. Carr, 369 U.S. 186, 197 (1962).

Fed. R. Civ. P. 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.  Neitzke v. Williams, 490 U.S. 319, 327 (1989) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) and Conley v. Gibson, 355 U.S. 41 (1957)).  "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." Neitzke, 490 U.S. at 327 (quoting Hishon, 467 U.S. at 73).  Thus, a claim should be dismissed under Rule 12(b)(6) when "it appears beyond doubt that the [P]laintiff can prove

5

no set of facts in support of his [legal] claim which would entitle him to relief." Conley, 355 U.S. at 45-46; Trifax Corp. v. District of Columbia, 314 F.3d 641, 643 (D.C. Cir. 2003).

As a general matter, complaints filed by pro se plaintiffs are "held to less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Moore v. Agency for Int'l Development et al., 994 F.2d 874, 876 (D.C. Cir. 1993). But a "pro se [plaintiff's] complaint, like any other, must present a claim upon which relief can be granted by the court." Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981). Even application of this less stringent standard, however, does not save Plaintiffs' Complaint from dismissal.

## ARGUMENT

**A.    This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Complaint Because Plaintiffs Do Not Have Standing.**

"The question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" Bennett v. Spear, 520 U.S. 154, 162 (1997), quoting Warth v. Seldin, 422 U.S. 490, 498 (1975). "To satisfy the 'case' or 'controversy' requirement of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992), and Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471- 72 (1982)). To establish injury in fact, the plaintiff must demonstrate an "invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" Defenders of Wildlife, 504 U.S. at 560 (1992) (citations and footnote omitted).

The plaintiff bears the burden of establishing all three elements, and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. at 561. "At the pleadings stage, general factual allegations of

injury resulting from the defendant's conduct may suffice." Id. However, when a district court allows or requires a plaintiff to supply further particularized allegations supportive of standing, the complaint must be dismissed if, after this opportunity, "standing does not adequately appear from all materials of record." Warth, 422 U.S. at 501-02.

In addition to the Article III requirements, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." Bennett, 520 U.S. at 162 (internal citations omitted). "Like their constitutional counterparts, these 'judicially self-imposed limits on the exercise of federal jurisdiction' are 'founded in concern about the proper-and properly limited-role of courts in a democratic society;' but unlike their constitutional counterparts, they can be modified or abrogated by Congress." Id. (internal citations omitted). One such prudential requirement is "the general prohibition on a litigant's raising another person's legal rights." Allen v Wright, 468 U.S. 737, 751 (1984). "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499.

In the present case, the individual Plaintiffs do not meet the Article III or judicially imposed standing requirements. Plaintiffs do not and cannot establish any injury in fact. The individual Plaintiffs' lack of injury in fact is reflected in their Complaint which, even if construed liberally, alleges no invasion of a legally-protected interest. See Compl. The lack of injury in fact is itself fatal, but prudential standing is also lacking in this case. The individual Plaintiffs make no individual claims and only assert alleged tribal interests. See Compl. at 15. The Supreme Court has adhered to the rule that a party "'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Warth v. Seldin, 422 U.S. at 499, quoted in Kowalski v. Tesmer, 543 U.S. 125, 126.[2] Specifically, the alleged injury asserted by the individual Plaintiffs

_____

[2] An exception to this rule exists only when three criteria are satisfied: (1) the litigant must have suffered an injury in fact; (2) the litigant must have a close relation to the third party; and (3) there must be some hindrance to the third party's ability to protect his or her own interests. Powers v. Ohio, 499 U.S. 400, 410-11 (1991). Because each individual Plaintiff

relates only to the alleged tribal interests of the non-federally recognized "Tuscarora Indians." Moreover, the relief sought by the individual Plaintiffs in their Complaint is a declaratory judgment, mandamus and an injunction requiring the Secretary of the Interior to recognize the "Skaroreh Katenuaka Nation a/k/a Tuscarora Nation of Sovereign Indians of North Carolina." Compl. ¶ 1. Again, this relief seeks to address an alleged *tribal* injury, and not an injury related to the individual Plaintiffs as *individuals.* Thus, they have not asserted any cognizable injury in fact sufficient to establish standing as individual plaintiffs.

Furthermore, Plaintiffs' reliance upon Interior's 1938 determination that Lawrence Maynor and 21 others were at least "half" Indian under the IRA (see Compl. ¶ 18) does not substantiate any claim of injury in fact for either the individual Plaintiffs or for the Tuscarora Nation. As this Court found in the 2003 Action, Interior's determination did not confer tribal status, or any rights or privileges in any Indian tribe, on these individuals, much less on their descendants. See Maynor, 510 F.2d at 1256-57. Accordingly, no injury in fact can be derived from alleged rights that were found not to exist.

Likewise, none of the Plaintiffs can point to the 1975 Maynor decision as being the source of tribal rights that provides the basis for an assertion of injury. The 1975 Maynor decision did not confer any tribal rights on Mr. Maynor nor upon any of the Plaintiffs. Rather, that decision reflects the District of Columbia Circuit's statutory interpretation of the Lumbee Act of 1956; it found that the Lumbee Act did not preclude the 22 individuals recognized in 1938 as at least half Indian from receiving any non-tribal benefits that were available to them under the IRA. The court explained in Maynor that:

> Although the IRA was primarily designed for tribal Indians, and neither Maynor nor his relatives had any tribal designation, organization, or reservation at that time, it is clear from the language of the statute that some benefits of the Act were also open to any nonreservation Indian who could prove that he possessed at least one-half Indian blood. Among these benefits was the right to petition the Secretary to establish a reservation for such individuals, which, if granted, would afford them access to a wide range of federal Indian services (as members of a recognized Indian group on a

lacks injury in fact this exception is inapplicable and the standing requirement has not been satisfied.

reservation).

<u>Maynor</u>, 510 F.2d at 1256.  Importantly, the D.C. Circuit did not identify any particular benefits that might have been available to Lawrence Maynor, and the holding is limited to the determination that "nothing in the background of the Lumbee Act . . . indicate[s] that Congress had any desire to take away any rights from persons such as appellant Maynor who may have been granted such rights by prior legislation." <u>Id.</u> at 1258.

As Plaintiffs are aware (<u>see</u> Complaint ¶ 28), the Bureau of Indian Affairs ("BIA") has taken a position on what Mr. Maynor's rights entailed, and specifically explained in a letter sent to Mr. Maynor in 1989 (<u>see</u> Attachment A) that any benefits available to him under the IRA did not include tribal status or rights:

> This enrollment does not entitle you to membership in any Indian tribe, nor does it establish any tribal rights in your name.  It entitles you solely to those benefits set forth in the Act of June 18, 1934, for which you may otherwise be eligible.  These benefits include educational assistance in the form of student loans and preference in employment in the Indian Service under Civil Service regulations and only in the event that you are suitably qualified . . . Furthermore, this enrollment would not apply to any children you may have, unless they were born of a mother who had likewise been determined to be one-half or more Indian.

2003 complaint, Ex.1, Attachment A.[3/]  Accordingly, no rights were created upon which Plaintiffs can now claim an invasion of a legally protected interest that is "concrete and particularized."  <u>Defenders of Wildlife</u>, 504 U.S. at 560.  Because none of the Plaintiffs can establish an injury in fact, there is likewise no injury that can logically be traceable to Defendant that could be redressed by a favorable decision.  <u>Valley Forge Christian College</u>, 454 U.S. at 471-72.  The Plaintiffs therefore lack standing.

Finally, the "Tuscarora Nation" lacks standing to sue as a tribe.  "An American Indian tribe does not exist as a legal entity unless the federal government decides that it exists."

---

[3/]Courts have also recognized that non-tribal rights and benefits are not inheritable.  <u>See</u> <u>United States v. Von Murdock</u>, 132 F. 3d 534, 539-40 (10th Cir. 1997) (non-tribal members' right to hunt and fish is not inheritable).

Kahawaiolaa v. Norton, 386 F. 3d 1271, 1273.  "Absent federal recognition, tribes do not enjoy the same status, rights and privileges accorded federally recognized tribes."  See id. at 1273, n.1; see also 25 C.F.R. § 83.2.  Federally recognized tribal status is required to bring tribal claims.  See 25 U.S.C. §§ 3001, 3004, 3005; United States v. 43.47 Acres of Land More or Less, 855 F. Supp. 549, 551 (D. Conn. 1994).  The Complaint does not allege that the "Tuscarora Nation" is a federally recognized tribe.  Nor does the "Tuscarora Nation" appear on the list of "Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs."  See 70 Fed. Reg. 71, 194 (Nov. 25, 2005).  Accordingly, the Plaintiff "Tuscarora Nation" also lacks standing.

**B.    Plaintiffs' Failure to Properly Allege a Waiver of Sovereign Immunity Warrants Dismissal.**

It is well established that absent a waiver of sovereign immunity, the United States is immune from suit.  See Loeffler v. Frank, 486 U.S. 549, 554 (1988). Waivers of sovereign immunity must be "unequivocally expressed in the statutory text" and "strictly construed, in terms of . . . scope, in favor of the sovereign." Department of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999) (internal quotations omitted).  It is the plaintiff's burden to show that the "government has unequivocally waived its immunity." Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575  (D.C. Cir. 2003).

While Plaintiffs do cite to 5 U.S.C. § 702, the Administrative Procedure Act ("APA"), (Compl. ¶ 9), which serves as a waiver of the United States' sovereign immunity for challenges to final federal agency action that seek relief other than money damages, Plaintiffs here have not identified a final agency action.  See APA Section 704 (providing for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court.").  Without a final agency action, the APA does not waive sovereign immunity for any of Plaintiffs' claims.  First, even liberally construed, the Complaint does not identify, much less challenge, any agency action regarding the individual Plaintiffs.  The Complaint focuses on tribal claims.  Likewise, the Prayer for Relief contains no request for individual relief, and instead seeks federal recognition and

10

benefits for the "Tuscarora Nation."  Compl. at 15.[4]  Accordingly, with regard to the

individual Plaintiffs, these allegations do not identify agency action, much less final agency

action, within the meaning of the APA.  "Without a record of federal agency action," there is

"no APA cause of action and therefore no waiver of sovereign immunity."  Floyd v. District

of Columbia, 129 F.3d 152, 156 (D.C. Cir. 1997); see also Independent Petroleum Ass'n of

America v. Babbitt, 235 F.3d 588, 594 (D.C. Cir. 2001) ("The requirement of a final agency

action has been considered jurisdictional. If the agency action is not final, the court therefore

cannot reach the merits of the dispute.") (internal citations omitted).

　　　　While the Complaint does allege that the "Tuscarora Nation" has applied for federal

recognition on several occasions, (Compl. ¶ 15), the Complaint fails to allege any final

agency action with regard to the "Tuscarora Nation."  To the extent that Plaintiffs raise a

claim for federal recognition as an Indian tribe, they should be required to exhaust their

administrative remedies by filing a petition for acknowledgment with the Bureau of Indian

Affairs.[5]  "In cases where Congress has allocated decision-making responsibility to the

---

[4] Paragraph 28 alleges that since the decision in Maynor v. Morton, the "Tuscarora Nation"
has applied for federal recognition on several occasions.  Id.  This paragraph further alleges
that Lawrence Maynor contacted the BIA regarding benefits for the "Tuscarora Indians of
North Carolina" in light of the Maynor decision.  Id.  In response, BIA allegedly explained
that the "Tuscarora Nation" was not a party to the case, and that BIA had provided benefits to
the individuals who had been certified under the IRA as having at least one-half Indian blood.
Id.  The Complaint, however, does not allege that any of the individual Plaintiffs applied to
BIA for individual recognition as half-blood Indians under the IRA.

[5] Plaintiffs purport to seek relief for people that appear to have resided or reside in Robeson
County, North Carolina.  Complt. ¶ 15.  Interior, therefore, may be precluded by Congress
from processing these groups under its acknowledgment regulations.  The last sentence of
section one of the Lumbee Act provides that "Nothing in this Act shall make such Indians
eligible for any services performed by the United States for Indians because of their status as
Indians, and none of the statutes of the United States which affect Indians because of their
status as Indians shall be applicable to the Lumbee Indians."  70 Stat. at 255.  Based on the
analysis of this disclaimer language, Interior has determined that this Act constitutes
termination legislation within the meaning of the acknowledgment regulations' sections 25
C.F.R. § 83.3 (e) and § 83.7 (g), which jointly operate to preclude the BIA from considering
the application of groups considered to be "Lumbee Indians" for acknowledgment.

Executive branch, petitioning parties are required to exhaust all available administrative remedies before seeking judicial relief." Burt Lake Bank of Ottawa and Chippewa Indians v. Norton, 217 F. Supp. 2d 76, 78 (D.D.C. 2002) (citing James, 824 F.2d at 1137). In James, the court found that requiring exhaustion served the following purposes:

> (1) letting the agency apply its expertise to the matter, (2) respecting the autonomy of the agency, (3) aiding judicial review by allowing the parties to develop the administrative record and (4) promoting judicial economy by avoiding needless repetition of administrative and judicial fact finding or, in some cases, any judicial review at all.

James, 842 F.2d at 1137-38. The James court held that "requiring exhaustion of the Department of the Interior's procedures for tribal recognition, before permitting judicial involvement, serves" the purposes of the exhaustion doctrine. James, 824 F.2d at 1137–38. Requiring Plaintiffs to exhaust their administrative remedies would likewise serve the same purposes. Accordingly, Plaintiffs' failure to exhaust their administrative remedies warrants dismissal.[6/]

## C.    Plaintiffs' Claims Are Barred by the Statute of Limitations.

Even if Plaintiffs had standing, and even if they had exhausted their administrative remedies, the present action would be barred by the statute of limitations. Even assuming arguendo that the BIA's 1989 response to Lawrence Maynor's letter constituted a reviewable

---

[6/]Plaintiffs appear to assert that they are not required to exhaust their administrative remedies because "it would be futile for Plaintiffs to file any further applications for recognition with Defendant Secretary of the Interior." ¶ 33. This argument is without merit. While there does exist a "futility exception" to the requirement of exhausting administrative remedies, the exception is very limited. See Peter Kiewit Sons' Co. v. United States Army Corps. of Eng'rs, 714 F.2d 163, 168-69 (D.C. Cir.1983) (exhaustion requirement waived in "only the most exceptional circumstances"). A request for an administrative remedy is not futile just because it will "probably fail," because "most appeals fail." Randolph-Sheppard., 795 F.2d at 106; Health Equity Res. Urbana, Inc. v. Sullivan, 927 F.2d 963, 966 (7th Cir.1991). Rather, the appeal must be "clearly useless" and denial of relief must be a "certainty" to excuse failure to exhaust administrative remedies. Marine Mammal, 134 F.3d at 413; Shoshone Bannock Tribes v. Reno, 56 F.3d 1469, 1476 (D.C.Cir.1995). Where, as here, the Complaint does not even allege a petition for acknowledgment (see 25 C.F.R. §§ 83.5, 83.7), the Complaint does not allege the "most exceptional circumstances" falling under this exception.

final agency action that Plaintiffs could challenge (Compl. ¶ 28), the time for challenging it has long passed.  Plaintiffs claim would have accrued 17 years ago.  See 28 U.S.C. 2401(a) (providing 6-year statute of limitations for challenges brought against the United States). See Harris v. F.A.A., 353 F.3d 1006, 1010 (D.C. Cir.), cert. denied, 125 S.Ct. 34 (2004) (the six-year statute of limitations applicable to APA claims begins to run on the date of the final agency action that is challenged).

D.    **To the Extent that Plaintiffs Allege a Claim Against the United States for Recognition as an Indian Tribe, That Claim Should be Dismissed as a Non-Justiciable Political Question.**

The Constitution vests in Congress plenary power over relations involving Indians. Article I, Section 8, cl. 3.  Congress, in turn, has delegated to the Executive branch management and regulation of Indian affairs.  25 U.S.C. §§ 2, 9; 43 U.S.C. § 1457.  See also Cherokee Nation of Oklahoma v. Babbitt, 117 F.3d 1489, 1503 (D.C. Cir. 1997) (discussing authority of Congress to restore tribal sovereignty and ability of Congress to delegate same to the Executive Branch); Indiana Miami, 887 F. Supp. at 1163-64; United Tribe of Shawnee Indians v. United States, 253 F.3d 543, 549 (10th Cir. 2001).  Adjudication of Plaintiffs' claims would require this Court to perform Executive Branch duties required in the tribal acknowledgment process and presents a non-justiciable political question.   The Supreme Court has declared political questions as those characterized by:

> a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Baker v. Carr, 369 U.S. 186, 217 (1962).

This circuit follows the view that federal determination of tribal status has long been regarded a political question inappropriate for judicial decision.  See, e.g., James v. U.S. Dep't of Health and Human Servs., 824 F.2d 1132, 1137 (D.C. Cir. 1987).  In James, the plaintiff, the Gay Head Tribe, sought to be federally recognized by the United States without

13

undergoing the BIA's recognition process. Id. at 1137. In affirming the lower court, the D.C. Circuit stated, "if the Executive branch determines that a tribe of Indians is recognized, that decision must be respected by the Judicial Branch." James, 824 F.2d at 1137. See also United Tribe of Shawnee Indians, 253 F.3d at 550 (citing with approval James court view against judicial intervention prior to completion of acknowledgment process).[7] To the extent that Plaintiffs in this case seek to be federally recognized as a tribe, this Court should dismiss its claims as Plaintiffs, like James, assert non-justiciable political questions.

**E.    Plaintiffs' Claims for Money Damages Exceed the Jurisdiction of this Court.**

Plaintiffs' Complaint requests $75,000 in money damages. See Compl. at 16. This claim is beyond the subject matter jurisdiction of this Court. The Tucker Act, 28 U.S.C. § 1491, gives the United States Court of Federal Claims jurisdiction to hear such claims and:

> to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491; Kidwell v. Dep't of Army, Bd. for Correction of Military Records, 56 F.3d 279, 283 (D.C. Cir. 1995). The Little Tucker Act, 28 U.S.C. § 1346(a)(2), provides for district courts to have concurrent jurisdiction with the Court of Federal Claims in cases seeking less than $10,000. 28 U.S.C. § 1346(a)(2); Kidwell, 56 F.3d at 283. In order "for a district court to maintain jurisdiction over a claim that might otherwise exceed $10,000, a

---

[7] The Supreme Court has stated the well-established rule with regard to questions of tribal existence:

> [I]t is the rule of this court to follow the action of the executive and other political departments of the government, whose more special duty it is to determine such affairs. If by them those Indians are recognized as a tribe, this court must do the same.

United States v. Holliday, 70 U.S. 407, 419 (1865) (cited with approval in United States v. Sandoval, 231 U.S. 28, 47 (1913); see also Cohen's Handbook of Federal Indian Law 268 (1942) ("[T]he courts have said that it is up to Congress and the Executive to determine whether a tribe exists."); Cohen's Handbook of Federal Indian Law 3-5 (1982).

14

plaintiff's waiver of amounts over that threshold must be 'clearly and adequately expressed.'" Waters v. Rumsfeld, 320 F.3d 265, 271 (D.C. Cir. 2003) (citing Goble v. Marsh, 684 F.2d 12, 17 (D.C. Cir. 1982)).  Plaintiffs have not made such a waiver.  Accordingly, because Plaintiffs in this case seeks damages over $10,000, this Court lacks jurisdiction.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that its motion to dismiss be granted and that Plaintiffs' Complaint be dismissed with prejudice.

June 30, 2006                              Respectfully submitted,

                                          SUE ELLEN WOOLDRIDGE
                                          Assistant Attorney General
                                          Environment and Natural Resources Division

                                          _____/s/Alex Kriegsman_____
                                          ALEX KRIEGSMAN
                                          Trial Attorney
                                          Natural Resources Section
                                          Environment and Natural Resources Division
                                          U.S. Department of Justice
                                          P.O. Box 663
                                          Washington, D.C. 20044
                                          Tel.:(202) 305-3022
                                          Fax:    (202) 305-0506

OF COUNSEL:

JASON C. ROBERTS
Attorney- Advisor
U.S. Department of the Interior
Office of the Solicitor
Division of Indian Affairs
1849 C Street, N.W., MS 6513
Washington, DC 20240
Tel.:    (202) 208-6526
Fax:    (202) 219-1791                    Attorneys For Defendant

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARTHA MAYNOR, LESTER LOCKLEAR, ALFORD MAYNOR, VONDOLA LOCKLEAR, ROY MAYNOR, SKAROREH KATENUAKA NATION, aka TUSCARORA NATION OF INDIANS OF NORTH CAROLINA | ) ) ) ) ) ) | Civil No. 1:06-CV-00612

Hon. Richard W. Roberts |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, | ) ) ) | [PROPOSED] **ORDER** |
| Defendant. | ) ) ) | |

Defendant's MOTION TO DISMISS came before this Court on June 30, 2006. After considering said motion, and all other relevant matters, said motion is hereby GRANTED.

Plaintiffs' Complaint is hereby DISMISSED WITH PREJUDICE and Judgment is hereby entered in favor of Defendant.

IT IS SO ORDERED.

_____
Honorable Richard W. Roberts
United States District Judge

# CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2006, a copy of the foregoing Motion to Dismiss and  memorandum of points and authorities in support of Defendants' Motion to Dismiss, and Proposed Order Granting Motion to Dismiss were served on:

Martha Maynor
53 Charlotte Road
Red Springs, N.C. 28372

Lester Locklear
6557 Rennert Road
Shannon, N.C. 28386

Alford Maynor
100 Lockwood Drive
Pembroke, N.C. 28372

Vondola Locklear
100 Lockwood Drive
Pembroke, N.C. 28372

Roy Maynor
100 Lockwood Drive
Pembroke, N.C. 28372

Plaintiffs, acting in *pro se* capacity, by causing full, true and correct copies thereof to be sent, on the date set forth above, by U.S. Mail.

*/s/ Alex Kriegsman*
Alex Kriegsman
Trial Attorney