The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

| THIS SEARCH | THIS DOCUMENT | GO TO |
|---|---|---|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
| | Contents Display | |

**Bill 1 of 1000**

| GPO's PDF Display | Congressional Record References | Bill Summary & Status | Printer Friendly Display - 6,920 bytes.[Help] |
|---|---|---|---|

## Lumbee Recognition Act (Introduced in Senate)

S 660 IS

109th CONGRESS

1st Session

**S . 660**

To provide for the acknowledgment of the Lumbee Tribe of North Carolina, and for other purposes.

### IN THE SENATE OF THE UNITED STATES

## March 17, 2005

Mrs. DOLE (for herself and Mr. BURR) introduced the following bill; which was read twice and referred to the Committee on Indian Affairs

### A BILL

To provide for the acknowledgment of the Lumbee Tribe of North Carolina, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

# SECTION 1. SHORT TITLE.

This Act may be cited as the `Lumbee Recognition Act'.

# SEC. 2. PREAMBLE.

The preamble to the Act of June 7, 1956 (70 Stat. 254), is amended--

(1) by striking `and' at the end of each clause;

(2) by striking `: Now, therefore,' at the end of the last clause and inserting a semicolon; and

(3) by adding at the end the following:

`Whereas the Lumbee Indians of Robeson and adjoining counties in North Carolina are descendants of coastal North Carolina Indian tribes, principally Cheraw, and have remained a distinct Indian community since the time of contact with white settlers;

`Whereas since 1885 the State of North Carolina has recognized the Lumbee Indians as an Indian tribe;

`Whereas in 1956 the Congress of the United States acknowledged the Lumbee Indians as an Indian tribe, but withheld from the Lumbee Tribe the benefits, privileges and immunities to which the Tribe and its members otherwise would have been entitled by virtue of the Tribe's status as a federally recognized Indian tribe; and

`Whereas the Congress finds that the Lumbee Indians should now be entitled to full Federal recognition of their status as an Indian tribe and that the benefits, privileges and immunities that accompany such status should be accorded to the Lumbee Tribe: Now, therefore,'.

## SEC. 3. FEDERAL RECOGNITION.

The Act of June 7, 1956 (70 Stat. 254), is amended--

(1) by striking the last sentence of the first section; and

(2) by striking section 2 and inserting the following:

## `SEC. 2. RECOGNITION.

`(a) IN GENERAL- Federal recognition is extended to the Lumbee Tribe of North Carolina. All laws and regulations of the United States of general application to Indians and Indian tribes shall apply to the Lumbee Tribe of North Carolina and its members.

`(b) PETITION- Notwithstanding the first section, any group of Indians in Robeson and adjoining counties, North Carolina, whose members are not enrolled in the Lumbee Tribe of North Carolina as determined under section 3(c), may petition under part 83 of title 25, Code of Federal Regulations (or any successor regulation) for acknowledgment of tribal existence.

## `SEC. 3. ELIGIBILITY FOR SERVICES AND BENEFITS.

`(a) IN GENERAL-

   `(1) SERVICES AND BENEFITS- The Lumbee Tribe of North Carolina and its members shall be eligible for all services and benefits provided to Indians because of their status as members of a federally recognized Indian tribe.

   `(2) RESIDENCE ON OR NEAR RESERVATION- For the purposes of the delivery of such services, members of the Tribe residing in Robeson, Cumberland, Hoke, and Scotland counties in North Carolina shall be deemed to be residing on or near an Indian reservation.

`(b) DETERMINATION OF NEEDS AND BUDGET-

   `(1) IN GENERAL- On verification by the Secretary of the Interior of a tribal roll under subsection (c), the Secretary of the Interior and the Secretary of Health and Human Services shall develop, in consultation with the Lumbee Tribe of North Carolina, a determination of needs and budget to provide the services to which members of the Tribe are eligible.

   `(2) INCLUSION IN BUDGET REQUEST- The Secretary of the Interior and the Secretary of Health and Human Services shall each submit a written statement of those needs and a budget with the first budget request submitted to Congress after the fiscal year in which the tribal roll is verified.

`(c) TRIBAL ROLL-

   `(1) IN GENERAL- For purposes of the delivery of Federal services, the tribal roll in effect on the date of enactment of this section shall, subject to verification by the Secretary of the Interior, define the service population of the Tribe.

   `(2) VERIFICATION- The Secretary's verification shall be limited to confirming compliance with the membership criteria set out in the Tribe's constitution adopted on November 11, 2000, which verification shall be completed not less than 1 year after the date of enactment of this section.

## `SEC. 4. FEE LAND.

   `Fee land that the Tribe seeks to convey to the United States to be held in trust shall be treated by the Secretary of the Interior as on-reservation trust acquisitions under part 151 of title 25 Code of Federal Regulations (or any successor regulation) if the land is located within Robeson County, North Carolina.

## `SEC. 5. STATE JURISDICTION.

   `(a) IN GENERAL- The State of North Carolina shall exercise jurisdiction over--

      `(1) all criminal offenses that are committed on; and

      `(2) all civil actions that arise on;

Contents Display

land located within the state of North Carolina that is owned by, or held in trust by the United States for, the Lumbee Tribe of North Carolina, or any dependent Indian community of the Lumbee Tribe of North Carolina.

`(b) TRANSFER-

  `(1) IN GENERAL- The Secretary of the Interior may accept on behalf of the United States, after consulting with the Attorney General of the United States, any transfer by the State of North Carolina to the United States of any portion of the jurisdiction of the State of North Carolina described in paragraph (1) under an agreement between the Lumbee Tribe and the State of North Carolina.

  `(2) EFFECTIVE DATE- A transfer of jurisdiction under paragraph (1) shall not take effect until 2 years after the effective date of the agreement.

`(c) EFFECT OF SECTION- This section shall not affect the application of section 109 of the Indian Child Welfare Act of 1978 (25 U.S.C. 1919).

## `SEC. 6. AUTHORIZATION OF APPROPRIATIONS.

`There are authorized to be appropriated such sums as are necessary to carry out this Act.'.

| *THIS SEARCH* | *THIS DOCUMENT* | *GO TO* |
|---|---|---|
| Next Hit | Forward | New Bills Search |
| Prev Hit | Back | HomePage |
| Hit List | Best Sections | Help |
| | Contents Display | |

THOMAS Home | Contact | Accessibility | Legal | FirstGov

# TESTIMONY OF
## R. LEE FLEMING
DIRECTOR, OFFICE OF FEDERAL ACKNOWLEDGMENT
UNITED STATES DEPARTMENT OF THE INTERIOR
BEFORE THE
SENATE COMMITTEE ON INDIAN AFFAIRS
ON S. 660

### July 12, 2006

Good morning, Mr. Chairman and Members of the Committee. My name is Lee Fleming and I am the Director of the Office of Federal Acknowledgment at the Department of the Interior (Department). I am here today to provide the Administration's testimony on S. 660, the "Lumbee Recognition Act."

The recognition of the continued existence of another sovereign is one of the most solemn and important responsibilities delegated to the Secretary of the Interior, which the Department administers through its acknowledgment regulations at 25 C.F.R. Part 83. Federal acknowledgment, or recognition, of tribal status enables Indian tribes to participate in Federal programs and establishes a government-to-government relationship between the United States and the Indian tribe. Acknowledgment carries with it certain immunities and privileges, which may include exemptions from state and local jurisdiction and the ability of newly acknowledged Indian tribes to undertake unique economic opportunities.

Under the Department's acknowledgment regulations, petitioning groups must demonstrate that they meet each of the seven mandatory criteria. The petitioner must:

(1) demonstrate that it has been identified as an American Indian entity on a substantially continuous basis since 1900;

(2) show that a predominant portion of the petitioning group comprises a distinct community and has existed as a community from historical times until the present;

(3) demonstrate that it has maintained political influence or authority over its members as an autonomous entity from historical times until the present;

(4) provide a copy of the group's present governing document including its membership criteria;

(5) demonstrate that its membership consists of individuals who descend from an historical Indian tribe or from historical Indian tribes that combined and functioned as a single autonomous political entity and provide a current membership list;

(6) show that the membership of the petitioning group is composed principally of persons who are not members of any acknowledged North American Indian tribe; and

(7) demonstrate that neither the petitioner nor its members are the subject of congressional legislation that has expressly terminated or forbidden the Federal relationship.

A criterion is considered met if the available evidence establishes a reasonable likelihood of the validity of the facts relating to that criterion.

The Department recognizes that under the United States Constitution Indian Commerce Clause, Congress has the authority to recognize a "distinctly Indian community" as an Indian tribe. But along with that authority, it is important that all parties have the opportunity to review all the information available before recognition is granted. That is why the Department of the Interior supports a recognition process that requires groups go through the Federal acknowledgment process because it provides a deliberative uniform mechanism to review and consider groups seeking Indian tribal status. Notwithstanding that preference, the Department recognizes that some legislation is needed given the unique status of certain Indians in North Carolina.

In 1956, Congress designated Indians then "residing in Robeson and adjoining counties of North Carolina" as the "Lumbee Indians of North Carolina" in the Act of June 7, 1956 (70 Stat. 254). Congress went on to note the following:

Nothing in this Act shall make such Indians eligible for any services performed by the United States for Indians because of their status as Indians, and none of the statutes of the United States which affect Indians because of their status as Indians shall be applicable to the Lumbee Indians.

In 1989, the Department's Office of the Solicitor advised that the 1956 Act forbade the federal relationship within the meaning of the acknowledgment regulations, and that the Lumbee Indians were therefore precluded from consideration for federal acknowledgment under the administrative process. Because of the 1956 Act, legislation is necessary for the Lumbee Indians to be afforded the opportunity to petition for tribal status under the Department's regulations. The Department would welcome the opportunity to assist the Congress in drafting such legislation.

If Congress elects to bypass the regulatory process in favor of legislative recognition of the Lumbee in a manner granting full sovereign rights, then the Department makes the following comments on S. 660, as currently drafted.

S. 660 extends Federal recognition to the "Lumbee Tribe of North Carolina" and permits any other group of Indians in Robeson and adjoining counties whose members are not

2

enrolled in the Lumbee Tribe to petition under the Department's acknowledgment regulations. The Office of Federal Acknowledgment has received letters of intent to petition from six groups that may overlap with each other. In addition, we have identified over 80 names of groups that derive from these counties and are affected by the 1956 Lumbee Act. Some of these groups claim to be the "Lumbee" Tribe. Therefore, we recommend Congress clarify the Lumbee group that would be granted recognition under this bill. Not doing so could potentially expose the Federal government to unwarranted lawsuits and possibly delay the recognition process.

One of the benefits or privileges available to recognized Indian tribes is the ability to conduct gaming under the Indian Gaming Regulatory Act (IGRA). Under S. 660, any fee land that the Lumbee seeks to convey to the United States to be held in trust shall be considered an "on-reservation" trust acquisition if the land is located within Robeson County, North Carolina, and gaming will be allowed on those lands under the provisions of IGRA. Prior to conducting Class III gaming, the Lumbee Tribe of North Carolina would need to negotiate a gaming compact with the State of North Carolina. In addition, the Lumbee Tribe of North Carolina must have lands taken into trust. Generally, if a tribe wants to game on land taken into trust after the passage of IGRA, it must go through the two-part determination described in 25 U.S.C. §2719(b)(1)(A). This process requires the Secretary to determine, after consultation with the tribe and the local community, that gaming is in the best interest of the tribe and its members and not detrimental to the local community. If the Secretary makes that determination in favor of allowing gaming, then the gaming still cannot occur without the Governor's concurrence.

Under S. 660, the State of North Carolina has jurisdiction over criminal and civil offenses and actions on lands within North Carolina owned by or held in trust for the Lumbee Tribe or "any dependent Indian community of the Lumbee Tribe." The legislation, however, does not address the State's civil regulatory jurisdiction, which includes jurisdiction over gaming, zoning, and environmental regulations.

We are concerned with the provision requiring the Secretary, within one year, to verify the tribal membership and then to develop a determination of needs and budget to provide Federal services to the Lumbee group's eligible members. Under the provisions of this bill, the "Lumbee Tribe", which the Department understands includes over 40,000 members, would be eligible for benefits, privileges and immunities that are similar to those possessed by other Federally recognized Indian tribes. In our experience verifying a tribal roll is an extremely involved and complex undertaking that can take several years to resolve with much smaller tribes. While we believe there are approximately 40,000 members, we do not currently have access to the Lumbee's tribal roll and thus do not have the appropriate data to estimate the time to verify them nor do we know how many Lumbee members may be eligible to participate in Federal needs based programs. Moreover, S. 660 is silent as to the meaning of verification for inclusion on the Lumbee group's tribal roll.

In addition, section 3 may raise a constitutional problem by purporting to require the President to submit annually to the Congress as part of his annual budget submission a

3