IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARTHA MAYNOR, LESTER LOCKLEAR, | ) | |
| ALFORD MAYNOR, VONDOLA LOCKLEAR, | ) | |
| ROY MAYNOR, SKAROREH KATENUAKA | ) | |
| NATION, a/ka TUSCARORA NATION OF | ) | |
| INDIANS OF NORTH CAROLINA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil No. 1:06-CV-612 |
| v. | ) | Hon. Richard W. Roberts |
| | ) | |
| SECRETARY OF THE UNITED STATES | ) | |
| DEPARTMENT OF THE INTERIOR, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**

**DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

1

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . .     3

I.    BACKGROUND . . . . . . . . . . . . . . . . . . .     5

II.  PLAINTIFF SKAROREH KATENUAKA HAS STANDING  TO BRING
      THIS ACTION . . . . . . . . . . . . . . . . . . .     7

III. THE INDIVIDUAL PLAINTIFFS HAVE STANDING  TO BRING THIS
      ACTION . . . . . . . . . . . . . . . . . . . . .    13

IV.  BECAUSE THE SECRETARY CONTINUES TO REFUSE TO COMPLY
      WITH *MAYNOR V. MORTON,* IT WOULD BE FUTILE FOR PLAINTIFFS
      TO FILE ANY MORE APPLICATIONS FOR RECOGNITION, AND
      THEREFOR PLAINTIFFS HAVE EXHAUSTED THEIR ADMINISTRATIVE
REMEDIES . . . . . . . . . . . . . . . . . . . . .    15

V.   SOVEREIGN IMMUNITY AND THE STATUTE OF LIMITATIONS
      DO NOT PREVENT PLAINTIFFS FROM PURSUING THIS ACTION  . . .    17

VI.  PLAINTIFFS' CLAIM FOR RECOGNITION AS AN INDIAN TRIBE
      SHOULD NOT BE DISMISSED AS A NON-JUSTICIABLE POLITICAL
      QUESTION . . . . . . . . . . . . . . . . . . . .    19

VII. PLAINTIFFS' SECONDARY REQUEST FOR DAMAGES IN PART FOR
      CONTEMPT AND VIOLATION OF *MAYNOR V. MORTON* DOES NOT
      REQUIRE DISMISSAL OR TRANSFER OF THIS CASE TO THE COURT
      OF FEDERAL CLAIMS . . . . . . . . . . . . . . . .    20

VIII. CONCLUSION . . . . . . . . . . . . . . . . . .    22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bennett v. Spear,* 520 U.S. 490 (1997) . . . . . . . . . . . . . . .   7, 14

*Bowen v. Mass.*, 487 U.S. 879 (1988) . . . . . . . . . . . . . . .   20, 22

*Daedulus Enterprises, Inc. v. Baldridge,* 563 F.Supp. 1345 (D. D.C. 1983) . . . .   16

*Francis E. Heydt Co. v. United States,* 948 F.2d 672 (10th Cir. 1991) . . . . . .   21

*Greene v. Babbitt,* 64 F.3d 1266 (9th Cir. 1995) . . . . . . . . . . .   11

*Hahn v. United States,* 757 F.2d 581 (3d Cir. 1985) . . . . . . . . . .   21

*Kahawaiolaa v. Norton,* 386 F.3d 1271 (2004), *cert. den.,* 435 U.S. 1114  (2005) .   9, 10, 19

*Kidwell v. Dep't of  the Army,* 56 F.3d 279 (D.C. Cir. 1995) . . . . . . . . .   21

*Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682 (1949) . . . . . .   21

*Marine Mammal Conservancy, Inc. v. Dep't of Agriculture,* 134 F.3d 409
    (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . .   16

*Maynor v. Morton,* 510 F.2d 1254 (D.C. Cir. 1975) . . . . . . . . . . .   *Passim*

*McKart v. United States,* 395 U.S. 185 (1969) . . . . . . . . . . . .   15

*Montoya v. United States,* 180 U.S. 261 (1901) . . . . . . . . . . . .   9

*Peter Kiewit Sons' Co. v. U.S. Army Corps of Engineers,* 714 F.2d 163, 168
    (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . .   15

*Randolph-Sheppard Vendors of Am. v. Weinberger,* 795 F.2d 90 (D.C. Cir. 1986) . . .   16

*Sterling Drug, Inc. v. FTC*, 450 F.2d 698 (D.C. Cir. 1971) . . . . . . . . .   15

*Timpanogos Tribe v. Conway,* 286 F.3d 1195 (10th Cir. 2002) . . . . . . . .   11

*United States  v. 43.46 Acres of Land More or Less,* 855 F.Supp. 549 (D. Conn. 1994) .   9, 10

*Vietnam Veterans of America v. Secretary of Navy,* 843 F.2d 528 (D.C. Cir. 1988) .   20 ,  21

*Woodruff v. United States DOT,* 448 F.Supp.2d 7 (D. D.C. 2006)  .  .  .  .  .  .  .  .  22

### FEDERAL STATUTES

So-called Lumbee Act of 1956, 70 Stat. at 255.  .  .  .  .  .  .  .  .  .  .  .  .  *Passim*

5 U.S.C. § 704  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  17

Indian Nonintercourse Act, 25 U.S.C. § 177  .  .  .  .  .  .  .  .  .  .  .  .  9

Indian Reorganization Act of 1934, 25 U.S.C. § 461 *et. Seq.,*  .  .  .  .  .  .  .  .  .  5, 8**,** 14

25 U.S.C. § 3001  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  12

25 U.S.C. § 3004  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  12

25 U.S.C. § 3005  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  12

### FEDERAL RULES

Rule 17, Federal Rules of Civil Procedure  .  .  .  .  .  .  .  .  .  .  .  .  .  7

### FEDERAL REGULATIONS

25 C.F.R. § 83  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  5

# I. BACKGROUND

More than 32 years ago, the United States Court of Appeals for this Circuit issued its decision in *Maynor v. Morton,* 510 F.2d 1254 (D.C. Cir. 1975). The Court of Appeals decisively rejected the Secretary's interpretation of the 1956 so-called Lumbee Act, 70 Stat. At 255, to "terminate" the rights of the Indians of Robeson County under the Indian Reorganization Act. The Court of Appeals declared: "On the plain language of the statute, we think the Secretary and his Deputy Solicitor erred. . . . (We) do not see that Congress manifested any intention whatsoever to take away any rights conferred on any individuals by any *previous* legislation." 510 F.2d at 1257-8.

Nevertheless, the Secretary continues to maintain the same interpretation decisively rejected by the Court of Appeals. The Secretary expressed that position in the following language in its Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, at page 11, footnote 5:

> Based on the analysis of this disclaimer language {in the last sentence of section one of the so-called Lumbee Act}, Interior has determined that this Act constitutes termination legislation within the meaning of the acknowledgment regulations' section 25 C.F.R. § 83.3(e) and § 83.7(g), which jointly operate to preclude the BIA from considering the application of groups considered to be "Lumbee Indians" for acknowledgment.

The Secretary also took that position in testimony on S. 660, the so-called "Lumbee Recognition Act," before the Senate Committee on Indian Affairs on July 12, 2006, at page 2, which Plaintiffs provided to the Court with their Motion to Hold Case in Abeyance. There the Secretary's representative said that the 1956 so-called Lumbee Act actually forbade the Secretary to give tribal recognition to any group of Indians in Robeson County. Of course, the Court of Appeals in *Maynor* expressly held that the 1956 so-called Lumbee Act did no such thing.

5

Thus, the Secretary has clearly been acting in violation of the *Maynor* decision to the severe prejudice of the Indians of Robeson County, including Plaintiffs and their tribe, the Skaroreh Katenuaka Nation, a/k/a Tuscarora Nation of Indians of North Carolina.

In its Memorandum, at page 4, the Secretary misrepresented the language of the 1956 so-called Lumbee Act as follows:

> Under the Lumbee Act, the Lumbee Indians . . . were not "eligible for any services performed by the United States for Indians because of their status as Indians, and none of the statutes of the United States which affect Indians because of their status as Indians shall be applicable to the Lumbee Indians.

The actual language of the statute is very different because the Secretary's Memorandum omitted the introduction to the quoted sentence and replaced it with language with a very different meaning. The actual language of the statute does not say that the 'the Lumbee Indians . . were not eligible" but rather states: "Nothing in this act shall make such Indians eligible . . . ." As the United States Court of Appeals explained in *Maynor v. Morton*:

> {The conclusion of the Secretary of Interior} was based entirely on a legal opinion of the Deputy Solicitor, dated 28 November 1972, to the effect that the clause concerning eligibility for federal Indian services, which the Secretary had secured as an addition to the Lumbee Act of 1956, terminated the rights which the petitioners had obtained in 1938 by virtue of their certification as Indians of more than fifty percent blood. . . . On the plain language of the statute, we think the Secretary and his Deputy Solicitor erred. The Interior-inspired clause says, "Nothing in this Act shall make such Indians eligible for any services . . . because of their status as Indians." To our minds the key phrase is "nothing in this act." . . . Congress was very careful not to confer *by this legislation* any special benefits on these people so designated as Lumbee Indians. But we do not see that Congress manifested any intention whatsoever to take away any rights conferred on any individuals by any *previous* legislation.

510 F.2d 1254 at 1257-8. On April 10, 1975, pursuant to the directive of the Court of Appeals, this Court issued an Order granting a declaratory judgment on behalf of Mr. Lawrence Maynor "establishing his eligibility for benefits under the Indian Reorganization Act of 1934". Thus, by

omitting what *Maynor v. Morton* called "the key phrase" in the so-called Lumbee Act, the

Memorandum of the Secretary of Interior twisted the meaning of the statute in continued

defiance of *Maynor v. Morton.*

Congress has taken no action to modify the so-called Lumbee Act of 1956 and *Maynor v.*

*Morton* remains controlling authority binding on the Secretary.

Plaintiffs' principal purpose is to obtain judicial enforcement of the *Maynor v. Morton*

decision and their rights under the Indian Reorganization Act. The first prayer for relief in

Plaintiffs' Complaint is as follows: "A declaratory judgment that Plaintiffs are eligible for

federal recognition and that the 1956 so-called Lumbee Act did not terminate that eligibility."

Plaintiffs also ask the Court for appropriate remedies for the decades of violation of the *Maynor*

*v. Morton* decision and their rights under the Indian Reorganization Act by the Secretary.

## II.  PLAINTIFF SKAROREH KATENUAKA HAS STANDING
## TO BRING THIS ACTION.

The Secretary does not dispute that Plaintiff Skaroreh Katenuaka, a/k/a Tuscarora Nation

of Indians of North Carolina, has legal capacity to bring this action. Rule 17 of the Federal

Rules of Civil Procedure provides that an "unincorporated association . . . may sue or be sued in

its common name for the purpose of enforcing for or against it a substantive right existing under

the Constitution or laws of the United States."

The Secretary also does not dispute that, for the purposes of its Motion to Dismiss,

Plaintiff Skaroreh Katenuaka, a/k/a Tuscarora Nation of Indians of North Carolina, by its

Complaint satisfies the standing requirements of demonstrating that it "'has suffered "injury in

fact," that the injury is "fairly traceable" to the actions of the defendant, and that the injury will

likely be redressed by a favorable decision.'"  *Bennett v. Spear,* 520 U.S. 490, 498 (1997). The

Complaint, in its Paragraph 14, alleges that "Pursuant to the Indian Reorganization Act of 1934,

25 U.S.C. § 461 *et. seq.*, the Tuscarora Indians in North Carolina are Indians entitled to tribal

recognition through Plaintiff Skaroreh Katenuaka Nation, a/k/a Tuscarora Nation of Indians of

North Carolina." The Complaint, in its Paragraphs 17 through 28, alleges that Plaintiff and its

members on its behalf have on many occasions petitioned the Secretary for tribal recognition.

The Complaint, in its Paragraph 29, then alleges that Plaintiff's efforts have been stymied by the

persistent refusal of the Secretary to honor the mandate of *Maynor v. Morton* and the persistent

insistence of the Secretary to interpret the last sentence of the so-called Lumbee Act of 1956 to

terminate the rights of Plaintiff and its members under the Indian Reorganization Act in direct

violation of the holding and the declaratory judgment in *Maynor v. Morton.* Finally, the

Complaint seeks several remedies for that violation. For example, in Paragraph 37 and the first

paragraph of the Prayer, Plaintiff seeks a declaratory judgment "That Plaintiffs are eligible for

federal recognition and that the 1956 so-called Lumbee Act did not terminate that eligibility." In

Paragraph 41 and the eighth paragraph of the Prayer, Plaintiff seeks the issuance of an order to

show cause to the Secretary why it should not be held in contempt for violation of the mandate

of *Maynor v. Morton.*

　　　　Instead, the Secretary cites two cases and three statutes to argue that because of the

wrongful refusal of the Secretary to grant federal recognition to Plaintiff, or even to give fair

consideration to Plaintiff's application for federal recognition, Plaintiff lacks standing to sue for

benefits that are available only for a federally recognized tribe. Those authorities do not govern

this case because the gravamen of Plaintiff's Complaint is simply to seek that federal

recognition, or at least to seek fair consideration for that federal recognition in accordance with

the law, and to clear the path for that by calling the Secretary to account for the Department's

defiance of the mandate of *Morton v. Maynor.* The issue of the scope of the remedy for the

decades of the Secretary's defiance of *Morton v. Maynor* is a separate matter to be resolved once the basic violation by the Secretary is established.

The authority cited by the Secretary does not suggest that a non-federally recognized Indian tribe does not have standing to bring a lawsuit.  On the contrary, in *United States  v. 43.46 Acres of Land More or Less,* 855 F.Supp. 549 (D. Conn. 1994), the Court noted that "Tribal status has two aspects."  *Id.* at 551. One is "'a body of Indians of the same or similar race, united in a community under one leadership or government, and inhabiting a particular though sometime ill-defined territory' . . . defined prior to formation of the United States." *Id.* (quoting *Montoya v. United States,* 180 U.S. 261, 266 (1901).)  The other is the "existence of the group, which, by succession, has preserved the characteristics of the tribe."[1]  *Id.*  The first aspect is a matter of historical fact.  Only the second aspect is for recognition by the Secretary.  *Id.*  There is no indication in the decision that the tribe involved in that case, the Schaghticoke Tribe, had ever sought federal recognition, so there was no issue with regard to the corruption of the recognition process.  The only issue was whether the Schaghticoke Tribe could invoke the Indian Nonintercourse Act, 25 U.S.C. § 177,  to claim an interest in land being condemned for the Appalachian National Scenic Trail. In that context, the Court held:  "The question is not whether that Tribe is an Indian tribe for the purposes of the Act. The question is whether those who have

---

[1] In *Kahawaiolaa v. Norton,* 386 F.3d 1271 (2004), *cert. den.,* 435 U.S. 1114  (2005), the other decision cited by the Secretary, the Ninth Circuit explained the same point as follows:  "Much of the theory that underpins Indian law is that the Indian tribes possessed certain sovereign rights based on their existence as distinct political entities exercising authority over their members prior to the incorporation of their territory into the United States . . . ; thus, "tribes retain whatever inherent sovereignty they had as the original inhabitants of this continent to the extent that sovereignty has not been removed by Congress."  *Id.* at 1272-3.

here invoked its name are, or are qualified to represent, the Schaghticoke Tribe. It is that question . . . that must be answered by the BIA.".[2] *Id.*

The primary issue in this case is at one remove earlier than the issue in *United States  v. 43.46 Acres of Land More or Less*.  As the Complaint alleges, the diligent efforts of Plaintiff and its members to achieve federal recognition since the passage of the so-called Lumbee Act in 1956, have been thwarted by the Secretary's persistent misinterpretation of the so-called Lumbee Act despite being vigorously corrected by *Maynor v. Morton.*   Thus, the primary relief that Plaintiff Skaroreh Katenuaka seeks is the elimination of that illegal obstacle placed in the path of federal recognition by the Secretary.  The scope of the appropriate relief in the face of the harm caused by the decades of the Secretary's defiance of *Maynor v. Morton* is an issue that the Court should reach only after deciding the primary issue.  As to that primary issue, whether the relief is to be in the form of a declaratory judgment, mandamus, and/or a show cause order, Plaintiff Skaroreh Katenuaka clearly has standing.  With regard to this primary issue, Plaintiff seeks simply to have the Court repeat precisely the same action it took in *Maynor v. Morton*: to protect Plaintiff from the Secretary's use of an illegal standard to block its federal recognition.

This position is clarified by review of the other authorities relied on by the Secretary. The second case cited by the Secretary is  *Kahawaiolaa v. Norton,* 386 F.3d 1271 (2004), *cert.*

---

1 [2]Note that *Maynor v. Morton* found that the Secretary had answered much of that question in favor of Plaintiffs:  "Following enactment of the IRA in 1934, plaintiff Maynor and 208 other persons residing in Robeson County petitioned the Secretary for recognition as persons of one-half or more Indian blood. The Department of the Interior sent a team of anthropologists and other specialists to determine the quantum of Indian blood of each applicant. After extensive study, in 1938 a total of only 22 applications including Maynor's, were approved."  510 F.2d at 1256.  The Complaint alleges, in Paragraphs 2-6, 18, that the plaintiffs are the full sisters and the sons and daughter of Lawrence Maynor, and that the Secretary's certification of Lawrence Maynor recorded that he had "(2 brothers, 5 sisters, 2 sons, 2 daughters)".

*den.,* 435 U.S. 1114 (2005). The Secretary quoted part of a sentence from the decision. The full sentence is as follows: "Despite this general recognition of inherent sovereignty (and, perhaps, the irony), as far as the federal government is concerned, an American Indian tribe does not exist as a legal entity unless the federal government decides that it exists. N 1" *Id.* at 1273. The Court's footnote to that sentence makes clear that the Court did not intend the broad meaning that the Secretary gives it. The Court's footnote reads: "This is not to say, obviously, that non-federally recognized tribes do not exist, or do not possess rights. However, as a general matter, absent federal recognition, tribes do not enjoy the same status, rights, and privileges accorded federally recognized tribes." *Id.* The Court then made clear: "Federal recognition affords important rights and protections to Indian tribes, including limited sovereign immunity, powers of self-government, the right to control the lands held in trust for them by the federal government, and the right to apply for a number of federal services. 'Federal recognition may arise from treaty, statute, executive or administrative order, or from a course of dealing with the tribe as a political entity.'" *Id.; cf., e.g,, Timpanogos Tribe v. Conway,* 286 F.3d 1195, 1202-3 (10th Cir. 2002) (Unrecognized Tribe may sue to enforce hunting, fishing and gathering rights granted by an Executive Order and an Act of Congress); *Greene v. Babbitt,* 64 F.3d 1266, 1270-71 (9th Cir. 1995) (Unrecognized Tribe may sue to enforce treaty rights); Thus, the language on which the Secretary relies does not mean that a non-recognized tribe does not have an existence for which it might have the capacity to sue, only that without federal recognition it does not have the rights and protections given to recognized tribes. Indeed, the issue in *Kahawaiolaa v. Norton* was similar in its general nature to the primary issue in this case: Whether a regulation that the

Secretary promulgated that precludes consideration of certain groups (in that case, Hawaiians) for federal recognition was lawful or, as the plaintiff contended, violated the Fifth Amendment Equal Protection Clause. The Court adjudicated that issue on the merits, thus clearly recognizing the standing of the non-federally recognized tribe to raise it in the federal courts. Although the Court ruled against the plaintiff on the merits, what is important for present purposes is that the Court did accord standing to the non-federally recognized tribe to raise the issue. Of court, the issue on the merits is quite different in that case than in the present case, as, indeed, *Maynor v. Morton* has already ruled in favor of Plaintiff's position on the primary issue in this case.

Whatever impact this authority might have on the scope of Plaintiff's remedy, it has none on Plaintiff's standing to bring the action.

The Secretary also cites three statutes: 25 U.S.C. §§ 3001, 3004 and 3005. § 3001 merely defines "Indian tribe" to mean "any tribe, band, nation, or other organized group or community of Indians . . . which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." That statute does not preclude Plaintiff from suing to void an illegal obstacle to its recognition as eligible for those special programs and services. § 3004 merely directs federal agencies or museums with possession of Native American "funerary objects, sacred objects or objects of cultural patrimony" to provide a report about those objects and gives Indian tribes and Native Hawaiian Organizations access to certain information about those objects. Finally, § 3005 deals with "Repatriation of Native American human remains and objects possessed or controlled by Federal agencies and museums." Nothing in those statutes is relevant to the standing issue raised by the Secretary in this case. Indeed, nothing in this case relates to "funerary objects, sacred objects or

objects of cultural patrimony" or to "Repatriation of Native American human remains and objects possessed or controlled by Federal agencies and museums."

### III.  THE INDIVIDUAL PLAINTIFFS HAVE STANDING TO BRING THIS ACTION.

.    In *Maynor v. Morton,* the D.C. Circuit held:  Plaintiff Lawrence "Maynor is one of some 40,000 Indians who live in and around Robeson County in North Carolina."  510 F.2d at 1256. *Maynor v. Morton* also held that Maynor was one of 22 of those Indians who in 1938, "(a)fter extensive study," had been approved by the Secretary as Indians and "'entitled to benefits established by the Indian Reorganization Act.'"  *Id.*  The Court permitted Maynor standing to challenge the Secretary's misinterpretation of the later so-called Lumbee Act of 1956 to terminate those rights.  That misinterpretation affected the rights not only of Maynor, but of the other 21 persons who had been similarly approved by the Secretary and, indeed, of all of the 40,000 Indians in Robeson County.

The individual plaintiffs are in the same position as far as standing is concerned as Plaintiff Lawrence Maynor was in *Maynor v. Morton.*  The Complaint alleges that the individual plaintiffs are the full sisters and the sons and daughter of Lawrence Maynor.  The Complaint also alleges that the Secretary's decision approving Lawrence Maynor as an Indian acknowledged that he had ""(2 brothers, 5 sisters, 2 sons, 2 daughters)".  The Complaint, in its Paragraph 24, alleges that in 1971, the Secretary advised:  "It should be noted that all of the full brothers and sisters of these twenty-two persons would also be considered on-half or more Indian.  Further, all of the children of persons considered one-half or more Indian are automatically considered at least one-quarter Indian."  Finally, of course, the Complaint alleges that the individual plaintiffs are members of the Skaroreh Katenuaka Nation.  These allegations make clear that the individual

plaintiffs are among the 40,000 Indians of Robeson County. Of course, the Secretary's misinterpretation of the so-called Lumbee Act affected all of the Indians of Robeson County because it denied them all fair consideration by the Secretary of their claims for the rights and benefits of the Indian Reorganization Act.

Thus, the individual Plaintiffs are in the same position with regard to standing as Lawrence Maynor was as to the primary issue in this case. Indeed, that primary issue is simply a derivative of the issue in *Morton v. Maynor*. Plaintiff seek primarily to enforce the holding and the declaratory judgment in *Morton v. Maynor* against the Secretary who has been refusing to accept it. Plaintiffs satisfy the standing requirements of demonstrating that they have "'suffered "injury in fact," that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.'" *Bennett v. Spear,* 520 U.S. 490, 498 (1997). The Complaint, in its Paragraph 14, alleges that "Pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. 461 *et. seq.*, the Tuscarora Indians in North Carolina are Indians entitled to tribal recognition through Plaintiff Skaroreh Katenuaka Nation, a/k/a Tuscarora Nation of Indians of North Carolina." The Complaint, in its Paragraphs 17 through 28, alleges that Plaintiff and its members on its behalf have on many occasions petitioned the Secretary for tribal recognition. The Complaint, in its Paragraph 29, then alleges that Plaintiff's efforts have been stymied by the persistent refusal of the Secretary to honor the mandate of *Maynor v. Morton* and the persistent insistence of the Secretary to interpret the last sentence of the so-called Lumbee Act of 1956 to terminate the rights of Plaintiff and its members under the Indian Reorganization Act in direct violation of the holding and the declaratory judgment in *Maynor v. Morton.* Finally, the Complaint seeks several remedies for that violation. For example, in Paragraph 37 and the first paragraph of the Prayer, Plaintiff seeks a declaratory judgment "That Plaintiffs are

eligible for federal recognition and that the 1956 so-called Lumbee Act did not terminate that eligibility."   In Paragraph 41 and the eighth paragraph of the Prayer, Plaintiff seeks the issuance of an order to show cause to the Secretary why it should not be held in contempt for violation of the mandate of *Maynor v. Morton*.  Moreover, the Indian Reorganization Act provides rights to individuals independent of the rights of tribes.  The Secretary's misinterpretation of the so-called Lumbee Act of 1956 denies Plaintiffs those individual rights.

### IV.  BECAUSE THE SECRETARY CONTINUES TO REFUSE TO COMPLY WITH *MAYNOR V. MORTON,* IT WOULD BE FUTILE FOR PLAINTIFFS TO FILE ANY MORE APPLICATIONS FOR RECOGNITION, AND THEREFOR PLAINTIFFS HAVE EXHAUSTED THEIR ADMINISTRATIVE REMEDIES.

The doctrine of the exhaustion of administrative remedies "is, like most judicial doctrines, subject to numerous exceptions."  *McKart v. United States,* 395 U.S. 185, 193 (1969). One important reason for the doctrine is that "since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise."  *Id.,* 395 U.S. At 193, 89 S.Ct. At 1663. Thus, the exhaustion requirement is premised on a recognition that "agency decisions are frequently of a discretionary nature or frequently require expertise". *Peter Kiewit Sons' Co. v. U.S. Army Corps of Engineers,* 714 F.2d 163, 168 (D.C. Cir. 1983).   Thus, "exhaustion requirements may be dispensed with only 'where the agency has very clearly violated an important constitutional or statutory right.'" *Id.* Exhaustion is not required "where the agency has very clearly violated an important constitutional or statutory right. . . . Some cases, including *McKart*, suggest that judicial intervention may also be proper even though the agency action is not clearly illegal if the question involved is a strictly legal one not involving the agency's expertise or requiring for their decision the development of other factual or legal issues."

*Sterling Drug, Inc. v. FTC*, 450 F.2d 698, 710 (D.C. Cir. 1971). In addition, exhaustion is not required where it appears "that pursuing available administrative remedies would have been 'clearly useless,' that the ultimate denial of relief was a "'certainty.'" *Marine Mammal Conservancy, Inc. v. Dep't of Agriculture,* 134 F.3d 409, 413 (D.C. Cir. 1998). In this Circuit, the futility exception may be invoked where the agency "has evidenced a strong stand on the issue in question and an unwillingness to reconsider the issue. *Randolph-Sheppard Vendors of Am. v. Weinberger,* 795 F.2d 90, 106 (D.C. Cir. 1986). "When the agency has already made it abundantly obvious that it would not correct the error and would not conform its actions with the strictures of [the applicable statute], it would be meaningless to compel the hapless plaintiff to pursue further administrative remedies simply for form's sake." *Daedulus Enterprises, Inc. v. Baldridge,* 563 F.Supp. 1345, 1350 (D. D.C. 1983).

This is the quintessential case for application of the futility doctrine. The Secretary has boldly stated in its submissions to this Court that it refuses to comply with *Maynor v. Morton.* In Footnote 5 of its Memorandum, the Secretary has taken a position directly opposed to the clearly applicable binding precedent of *Maynor v. Morton* and has made clear its refusal to reconsider its position. The Secretary has made that position clear in rejecting petitions from Plaintiffs and members of their tribe, in testimony before Congress, and in its filings in this case. Accordingly, the exhaustion requirement may be dispensed with because the agency has clearly violated an important statutory right, has indicated a strong stand on the issue and an unwillingness to reconsider its position, the matter is not one that requires the exercise of discretion or the use of agency expertise to decide, and it is so certain that the agency would deny recognition based on its defiance of the decision in *Maynor v. Morton* that pursuing further administrative remedies would be useless.

The matter of exhaustion is not an idle one for Plaintiffs. Paragraphs 14 through 30 of the Complaint demonstrate the decades of efforts by Plaintiff Skaroreh Katenuaka and its members, including Plaintiffs and Lawrence Maynor, the individual plaintiffs' brother and father, to gain their legal rights only to be frustrated by the Secretary's improper invocation of the concluding provision of the so-called Lumbee Act of 1956, in violation of *Maynor v. Morton.*  The exhaustion requirement would further delay Plaintiffs by many years.

Paragraph 31 of the Complaint alleges:

31.  *Maynor v. Morton* acknowledged that "Maynor is one of some 40,000 Indians who live in and around Robeson County in North Carolina**."**  510 F.2d at 1256.  Those Indians have suffered severe discrimination against them as Indians, but the Bureau of Indian Affairs has never recognized a tribe among them. Demanding documentation that the Tuscarora Tribe did not choose or need to maintain, relying on the effects of abuses that the Tuscarora Tribe has suffered from the United States and North Carolina governments, including the assigning to them of names without any historical or other basis in authenticity and thereby trying to steal their identity, and taking advantage of the passage of time that has resulted from their delays in granting the recognition to which the Tuscarora Tribe have been entitled, and by defying the decision in *Maynor v. Morton***,** the Defendants, without denying that the Tuscaroras in North Carolina are Indians because there is no denying it, have refused to acknowledge their tribal status and the sovereignty that they have never given up.

Any further unnecessary delay would be a further aggravation of the condition of Plaintiffs and the members of their tribe.  Any further delay would be unnecessary.  The futility doctrine is clearly applicable in this matter to protect Plaintiffs against being required to undergo a futile process before returning to this Court with the same request for the same relief, only this time with a clear and recent denial of their application based on the Secretary's persistent refusal to comply with *Maynor v. Morton.*

## V.  SOVEREIGN IMMUNITY AND THE STATUTE OF LIMITATIONS DO NOT PREVENT PLAINTIFFS FROM PURSUING THIS ACTION.

5 U.S.C. § 704 provides as follows:

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

The Secretary's Memorandum, at pages 10-12, argues that Plaintiffs' action is barred by sovereign immunity because Plaintiffs have failed to exhaust their administrative remedies.

In this case, because the exhaustion of administrative remedies would be futile, as discussed in the preceding section, Plaintiffs may proceed with this action without a final administrative ruling.

The Secretary's Memorandum, in its Footnote 4, recognizes that Paragraph 28 of the Complaint alleges that Plaintiff Skaroreh Katenuaka "has applied for federal recognition on several occasions" since the decision in *Maynor v. Morton* and that the Secretary ruled that the tribe was not eligible for benefits because it "was not a party to the case". The Memorandum then argues that the Complaint does not allege that "the individual plaintiffs have not applied for individual recognition as half-blood Indians under the IRA." The essential point is that Plaintiff Skaroreh Katenuaka has diligently endeavored to obtain federal recognition from the Secretary and been refused and that the Secretary has persisted in refusing to comply with *Maynor v. Morton.* In addition, the Complaint alleges at Paragraph 24 that on November 29, 1971, the Secretary advised Plaintiff Skaroreh Katenuaka as follows: "It should be noted that all of the full brothers and sisters of these twenty-two persons would also be considered on-half or more Indian. Further, all of the children of persons considered one-half or more Indian are

automatically considered at least one-quarter Indian." The Complaint alleges that Plaintiffs

Martha Maynor and Lester Locklear are the full sisters of Lawrence Maynor and therefore the

Secretary has determined that they should be recognized "as half-blood Indians under the IRA."

The other individual plaintiffs are the children of Lawrence Maynor and therefore at least on-

quarter Indian under the Secretary's November 29, 1971 advice. More broadly, *Maynor v.*

*Morton* recognized that Lawrence "Maynor is one of some 40,000 Indians who live in and

around Robeson County in North Carolina." 510 F.2d at 1256. *Morton v. Maynor* also held: "It

should be noted that as little as one-quarter Indian blood suffices to confer many IRA benefits to

persons living on a reservation." 510 F.2d at 1256 n. 6.

Thus, Plaintiffs in this case include the tribe, the Skaroreh Katenuaka Nation, a/k/a

Tuscarora Nation of Indians of North Carolina, members of the Skaroreh Katenuaka Nation

determined to be at least half-blood Indians, members of the Skaroreh Katenuaka Nation

determined to be at least quarter-blood Indians, all the individuals being some of the "40,000

Indians who live in and around Robeson County in North Carolina." Thus, the proper plaintiff

or plaintiffs are before the Court.

The same argument defeats the argument in the Secretary's Memorandum, at pages 13-

14, that the statute of limitations bars Plaintiffs' claim.

### VI. PLAINTIFFS' CLAIM FOR RECOGNITION AS AN INDIAN TRIBE SHOULD NOT BE DISMISSED AS A NON-JUSTICIABLE POLITICAL QUESTION.

The Secretary's Memorandum, at pages 13-14, does not contend that Plaintiffs' principal

claim should be dismissed as a non-justiciable political question. Thus, the Secretary appears to

accept the question of whether the Secretary has violated or is in contempt of *Maynor v. Morton*

is a justiciable question, as it was held to be in *Maynor v. Morton* itself. *See, Kahawaiolaa v. Norton,* 386 F.3d 1271, 1276 (2004), *cert. den.,* 435 U.S. 1114 (2005).

The Secretary's Memorandum, at page 14, does, however, contend that "To the extent that Plaintiffs in this case seek to be federally recognized as a tribe, this Court should dismiss its claims as Plaintiffs . . . assert non-justiciable political questions." That contention, however, is premature at this stage of the proceeding. Plaintiffs' Complaint is sufficient to state a claim for the Secretary's violation of *Maynor v. Morton.* The Court should proceed to a determination of that issue. The next stage of the litigation presents the question of the remedy or the scope of the remedy to which Plaintiffs would be entitled after decades of the Secretary's violation of the clear direction of *Maynor v. Morton.* The Court need not reach that question at this stage, but may judiciously await its determination of the merits before settling on or limiting the nature or scope of the remedy that it might determine is required. The Court may consider the Secretary's submission in the context of reviewing the appropriate remedy.

### VII.  PLAINTIFFS' SECONDARY REQUEST FOR DAMAGES IN PART FOR CONTEMPT AND VIOLATION OF *MAYNOR V. MORTON* DOES NOT REQUIRE DISMISSAL OR TRANSFER OF THIS CASE TO THE COURT OF FEDERAL CLAIMS.

Plaintiffs' primary purpose is to enforce *Maynor v. Morton.* Jurisdiction for that primary purpose is in this Court and not the Court of Federal Claims. "The Claims Court does not have the general equitable powers of a district court to grant prospective relief." *Bowen v. Mass.,* 487 U.S. 879, 905, 914 (1988) . "First, insofar as the complaints sought declaratory and injunctive relief, they were certainly not actions for money damages." *Id.* at 892.

A plaintiff does not "in essence" seek monetary relief, however, merely because he or she hints at some interest in a monetary reward from the federal government or because success on the merits may obligate the United States to pay the complainant. *See Vietnam Veterans,* 843 F.2d at 534 ("It is … clear that a claim is

> not for money merely because its success may lead to pecuniary costs for the government or benefits for the plaintiff."). Even where a monetary claim may be waiting on the sidelines, as long as the plaintiff's complaint only requests non-monetary relief that has "considerable value" independent of any future potential for monetary relief, *see Francis E. Heydt Co. v. United States,* 948 F.2d 672, 677 (10th Cir. 1991) (internal quotation marks and citation omitted) -- that is, as long as the sole remedy requested is declaratory or injunctive relief that is not "negligible in comparison" with the potential monetary recovery, *see Hahn,* 757 F.2d at 589 -- we respect the plaintiff's choice of remedies and treat the complaint as something more than an artfully drafted effort to circumvent the jurisdiction of the Court of Federal Claims. *But see Vietnam Veterans,* 843 F.2d at 535 (noting, but not deciding, that pursuit of equitable relief in district court may preclude plaintiff from later seeking monetary relief in Court of Federal Claims). In such cases, even if the plaintiff filed the complaint with an eye to future monetary awards, a district court with otherwise appropriate jurisdiction may hear the claim and grant the proper equitable relief.

*Kidwell v. Dep't of the Army,* 56 F.3d 279, 284 (D.C. Cir. 1995). In *Kidwell,* the Court also

noted:

> *see also Hahn v. United States,* 757 F.2d 581, 589 (3d Cir. 1985) (concluding that district court did not have jurisdiction over request for money damages in complaint, but allowing it to retain jurisdiction over nonmonetary claims also requested); *cf. Vietnam Veterans,* 843 F.2d at 535 (noting that courts are divided, in cases where plaintiffs request both monetary and equitable relief, over whether Court of Federal Claims jurisdiction precludes district court from hearing simultaneous request for equitable relief or vice-versa, and that this court has not decided issue).

*Id.*

To the extent that Plaintiffs' request for money damages is based on the contempt or

violation of *Maynor v. Morton,* the request is within the inherent jurisdiction of this Court and

not within the Tucker Act. Accordingly, Plaintiffs request that the Court retain jurisdiction over

that part of their claim.

> Our cases have long recognized the distinction between an action at law for damages -- which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation -- and an equitable action for specific relief -- which may include an order providing for the reinstatement of an employee with backpay, or for "the recovery of specific property *or monies,* ejectment from land, or injunction either directing or restraining the defendant

officer's actions." *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688 (1949) (emphasis added). The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages." Thus, we have recognized that relief that orders a town to reimburse parents for educational costs that Congress intended the town to pay is not "damages":

*Bowen v. Mass.,* 487 U.S. 879, 893 (1988)

In any event, Plaintiffs request that the Court retain jurisdiction over the Plaintiffs' principal claims, which are non monetary. Those claims are paramount in this case, are certainly not negligible in comparison with the monetary claims, and "have considerable value independent of the monetary relief." *E.g., Woodruff v. United States DOT,* 448 F.Supp.2d 7, 12 (D. D.C. 2006).

Finally, if necessary to retain jurisdiction in this Court, Plaintiffs would waive their monetary claims in excess of $10,000. *Id.,* n.2. Plaintiffs request that the Court give them an opportunity to do so rather than dismiss the case or transfer it to the Court of Federal Claims.

## VIII. CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Secretary's Motion to Dismiss and permit Plaintiffs to proceed with this action to hold the Secretary accountable for its decades of defiance of *Maynor v. Morton* to the great detriment of Plaintiff Skaroreh Katenuaka Nation, a/k/a Tuscarora Nation of Indians of North Carolina, the individual plaintiffs who are the siblings and children of the plaintiff in *Maynor v. Morton,* and more than 40,000 Native Americans in Robeson County, North Carolina, who, while suffering severe discrimination as Native Americans, have also been suffering severe discrimination and deprivation of their rights by the Secretary as they have been striving through the appropriate legal processes for recognition of their rights as Native Americans

Respectfully submitted,
/s/
Barry Nakell
  149 Dixie Drive
  Chapel Hill, N. C. 27514
  Telephone:  (919) 967-7325
  Fax:  (919) 636-5285
  E-mail: bnakell@nc.rr.com

## *CERTIFICATE OF SERVICE*

I hereby certify that on May 14, 2007, I electronically filed the foregoing Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss with the Clerk of the Court using the CMF/ECF system which will send notification of such filing to Defendant Secretary of the United States Department of the Interior.

Respectfully submitted,
/s/
Barry Nakell
  N.C. State Bar No. 8148
  149 Dixie Drive
  Chapel Hill, N. C. 27514
  (919) 967-7325
  Fax:  (919) 636-5285
  Email:  bnakell@nc.rr.com

Attorney for Plaintiff