IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARTHA MAYNOR, LESTER | ) | |
| LOCKLEAR, ALFORD MAYNOR, | ) | Civil No. 1:06-CV-00612 |
| VONDOLA LOCKLEAR, ROY | ) | |
| MAYNOR, SKAROREH KATENUAKA | ) | Hon. Richard W. Roberts |
| NATION, aka TUSCARORA NATION | ) | |
| OF INDIANS OF NORTH CAROLINA | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| SECRETARY OF THE UNITED STATES | ) | |
| DEPARTMENT OF THE INTERIOR, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      *Maynor v. Morton* Did Not Confer Any Rights Upon Plaintiffs . . . . . . . . . . . . . . . . . . . . 2

II.     Plaintiffs Lack Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    Plaintiffs Fail to Identify a Valid Waiver of Sovereign Immunity  . . . . . . . . . . . . . . . . . 7

IV.     Even if Plaintiffs Have Identified a Final Agency Action, Their
        Claims Are Barred by the Statute of Limitations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.      This Court Does Not Have Jurisdiction Over Plaintiffs' Claims
        for Money Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## CASES

*Boivin v. U.S. Airways, Inc.*, 446 F.3d 148 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Byrd v. Envtl. Prot. Agency*, 174 F.3d 239 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798
 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13
 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Green v. Babbitt*, 64 F.3d 1266 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Holland v. Nat'l Mining Ass'n*, 309 F.3d 808 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Impro Prods., Inc. v. Block*, 722 F.2d 845 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kidwell v. Dep't of the Army*, 56 F.3d 279 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Maynor v. Morton*, 510 F.2d 1254 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Maynor v. United States*, 2005 U.S. Dist. Lexis 16873 (D.D.C. 2005) . . . . . . . . . . . . . . . *passim*

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs*, 714 F.2d 163
(D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Qwest Corp. v. F.C.C.*, 482 F.3d 471 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Timpanogos Tribe v. Conway*, 286 F.3d 1195 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 6

*W. Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . 6

## STATUTES

25 U.S.C. § 461 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

25 U.S.C. § 479 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Indian Reorganization Act, Pub. L. No. 73-383, 48 Stat 984 (1934) . . . . . . . . . . . . . . . . . . . . . . 3

Lumbee Act of 1956, Pub. L. No. 84-570 Stat. 254 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## REGULATIONS

25 C.F.R. § 83.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**INTRODUCTION**

Defendant Secretary of the United States Department of the Interior hereby submits this reply brief in support of his Motion to Dismiss.  In their response, Plaintiffs argue that the D.C. Circuit's decision in *Maynor v. Morton*, 510 F.2d 1254 (D.C. Cir. 1975) (the "1975 *Maynor* decision"), gave them rights that Defendant has refused to enforce.  However, as this Court has held, and is clear from a reading of the 1975 *Maynor* decision, that case did not bestow any rights under the Indian Reorganization Act of 1934 ("IRA"), 25 U.S.C. §§ 461 *et seq.  See Maynor v. United States* ("2005 *Maynor* decision")*,* 1:03cv1556 (Attachment B to Defendant's Mem. of P&A in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem."), 2005 U.S. Dist. Lexis 16873 (D.D.C. July 11, 2005)); *Maynor*, 510 F.2d at 1259.  Instead, the case determined only that the Lumbee Act of 1956, Pub. L. No. 84-570, 70 Stat. 254 (1956), did not act to terminate any pre-existing individual rights under the IRA for the 22 people previously determined to be Indians. The case did not extend recognition to those individuals as an Indian tribe, nor did it give recognition or rights of any kind to the individuals' descendants, relatives, or other people living in the vicinity.  Further, those 22 individuals are not parties to this litigation.  Thus, the 1975 *Maynor* decision does not provide Plaintiffs with standing or any other basis for this Court's jurisdiction.

Plaintiffs have failed to demonstrate that this Court has subject matter jurisdiction over their claims.  The 1989 letter referenced in Plaintiffs' Complaint is not final agency action. Plaintiffs thus have not alleged a valid waiver of sovereign immunity under the Administrative Procedure Act ("APA").  In addition, Plaintiffs have failed to exhaust their administrative remedies under the APA.  Even assuming, *arguendo,* that Plaintiffs have shown a waiver of

1

sovereign immunity, their claims would have accrued, at the latest, in 1989, far outside the APA's six-year statute of limitations.  Finally, Plaintiffs' request for money damages should be dismissed because it is outside the jurisdiction of this Court.

**ARGUMENT**

I.     ***Maynor v. Morton* Did Not Confer Any Rights Upon Plaintiffs.**

According to Plaintiffs, this suit is principally one "to obtain judicial enforcement of the *Maynor v. Morton* decision and their rights under the Indian Reorganization Act."  Mem. of P&A in Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n") at 7.  Plaintiffs' Complaint describes their suit as "an action for a declaratory judgment, mandamus, and an injunction, requiring the Secretary of the Interior to recognize the Skaroreh Katenuaka Nation, a/k/a Tuscarora Nation of Indians of North Carolina, pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461, *et seq.*, for an order to show cause why Defendant Secretary of the Interior should not be held in contempt for violation of the April 10, 1975 Order of this Court in *Maynor v. Morton*, United States District Court for the District of Columbia, Civil Action No. 337-73, pursuant to *Maynor v. Morton*, 510 F.2d 1254, 1259 (D.C. Cir. 1975), and for damages for the denial of rights, denial of benefits, and violation of the April 10, 1975 Order."  Compl. ¶ 1.

Plaintiffs apparently interpret the 1975 *Maynor* decision as entitling them to federal recognition as an Indian tribe.  *See, e.g.,* Compl. ¶¶ 25–28, 33, 36; Pls.' Opp'n at 7, 8.  This interpretation, however, is clearly erroneous.  A plain reading of the 1975 *Maynor* decision demonstrates that the case did not establish that Plaintiffs are entitled to federal recognition, or

any other benefits. The case solely held that the plaintiff in that case, Lawrence Maynor, was not deprived of his status as an Indian under the IRA by the Lumbee Act. *Maynor,* 510 F.2d at 1259. As this Court has previously recognized, the case did not confer any additional benefits on Lawrence Maynor or anyone else. *See* 2005 *Maynor* decision, 2005 U.S. Dist. LEXIS 16873, at *5–*7 (D.D.C. July 11, 2005), *aff'd*, No. 05-5362, 2006 U.S. App. LEXIS 3267 (D.C. Cir. Feb. 9, 2006). In the 1975 *Maynor* decision, the plaintiff, Lawrence Maynor, filed an action for declaratory judgment against the Secretary of the Department of the Interior. As recounted by the D.C. Circuit, in 1938, the Department of the Interior certified Lawrence Maynor and 21 other individuals as Indians under the IRA, meaning that they had at least one-half or more Indian blood.[1] *Maynor*, 510 F.2d at 1256. The Department notified the 22 individuals "that they were 'entitled to benefits established by the [IRA]. Please note that no other benefits are involved. These people do not obtain tribal status or any rights or privileges in any Indian tribe.'" *Id.* at 1256–57. After Congress passed the Lumbee Act of 1956, the Department took the position that the Act prevented the 22 individuals from eligibility for benefits under the IRA. *Id.* at 1257. In the 1975 *Maynor* decision, the court held that the Lumbee Act did not deprive Lawrence Maynor of the benefits conferred on him by the Department under the IRA:

> Plaintiff here is not seeking a declaration of eligibility for any benefits by virtue of his being a "Lumbee Indian" under the 1956 Act. He predicates his claim to a declaration of rights on his certification by the same Department of the Interior in 1938 that he is an Indian of more than fifty percent blood, and therefore an Indian

---

[1]The IRA defined "Indian" as "all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood." 25 U.S.C. § 479. The IRA made Indians eligible for certain benefits, such as housing, but did not grant tribal status to all persons found to be Indian. Pub. L. No. 73-383, 48 Stat. 984 (1934).

3

as defined in the IRA of 1934.  It is under this Act of 1934 that he lays claim to
whatever rights he might have.

*Id.* at 1259.  Thus, the court held that Lawrence Maynor and the other 21 individuals had rights
*as individuals* under the IRA that were not taken away by the Lumbee Act.

The 1975 *Maynor* decision did not hold that the plaintiff  Lawrence Maynor or the other

21 individuals certified as Indian under the IRA were an Indian tribe entitled to tribal

recognition.  In fact, the Court cited language explicitly stating that they were *not* entitled to

"tribal status or any rights or privileges in any Indian tribe."  *Id.* at 1256.  The case merely held

that the Lumbee Act did not deprive the plaintiff of rights previously conferred upon him.  The

court did not confer any additional benefits on the plaintiff, or hold that he was entitled to any

relief beyond declaratory judgment.  And, certainly, any holding in the case would only extend

to those who were actually parties to the case.  *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 813

(D.C. Cir. 2002) (noting that res judicata doctrine "'holds that a judgment on the merits in a prior

suit bars a second suit involving the same parties or their privies based on the same cause of

action'" (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n. 5 (1979)). None of

the Plaintiffs in this action were parties to the 1975 *Maynor* case.  Plaintiffs' reliance upon this

case, therefore, is misplaced.  Roy Maynor, also a plaintiff in the case at bar, brought a

substantially similar action in this Court in 2003.  This Court held that 1975 *Maynor* decision

does not support standing.  2005 *Maynor* decision, 2005 U.S. Dist. LEXIS 16873, at *5–*7.  *Roy*

*Maynor*, the Court held that "[n]either their status as ancestors of the 22 recognized Indians nor

the *Maynor* decision give Maynor or the other plaintiffs any rights or relief."  *Id.* at *7.  As the

Court noted, the *Maynor* decision did not affect or determine benefits under the IRA.

Rather, *Maynor* merely declared that the Lumbee Act of 1956 did not intervene to

4

preclude the 22 recognized individuals from receiving benefits under the IRA as
previously determined. *See Maynor*, 510 F.2d at 1259. *Maynor* did not confer
any additional benefits on the 22 individuals or grant benefits to other persons. It
merely affirmed the 22 individuals' status as Indians entitled to benefits conferred
by the IRA.

*Id.* at *5–*6.

## II.    Plaintiffs Lack Standing.

In order to have standing, a plaintiff must demonstrate that he suffered an injury in fact,

defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd*

*v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 103 (1998)). The injury must be fairly traceable to the governmental

conduct alleged, and it must be likely that the requested relief will redress the alleged injury. *Id.*

In this case, Plaintiffs do not have standing because they have not suffered harm from any

alleged violation of the 1975 *Maynor* decision*, as that case did not confer any tribal rights upon

Lawrence Maynor, much less the Plaintiffs in this action. *See also* 2005 *Maynor* decision at*7

(finding Roy Maynor lacked standing because he "has not established that he, or the other

plaintiffs, have any rights as Indians or have suffered any losses."). Nor do they allege a specific

injury or harm independent of the 1975 *Maynor* decision.

Plaintiffs also allege that they are in the same position as Lawrence Maynor in the 1975

*Maynor* decision. Pls.' Opp'n at 13. This argument is false. In the 1975 *Maynor* decision,

Lawrence Maynor had previously been certified as an Indian under the IRA, and was being

denied benefits as an individual Indian based on the Lumbee Act. None of the Plaintiffs in this

case are in a similar situation. None of the Plaintiffs allege that they have been so certified.

Further, their allegations that they are either the full-blood sisters or children of Lawrence

5

Maynor do not support standing. As the Supreme Court has made clear, a party can assert only one's own legal rights and interests, and cannot rely on a third party's injury to prove standing. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). In addition, Plaintiffs do not make any individual claims. They assert only "tribal injuries," but the Complaint is devoid of any allegations that the individual Plaintiffs are the leaders of the tribe or otherwise have authority to bring suit on behalf of the tribe. Nor has the non-federally recognized tribe demonstrated that it has standing to bring this lawsuit. *See* 2005 *Maynor* decision at *5. The non-federally recognized tribe, naturally, suffers from the same lack of injury as the individual plaintiffs because it did not obtain any tribal rights under the 1975 *Maynor* decision. In addition, in terms of tribal standing, an unrecognized group cannot sue to receive the benefits received by recognized Indian tribes. *See W. Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052, 1058 (10th Cir. 1993) (holding that unrecognized tribe lacked standing to pursue statutory action). Plaintiffs are correct that unrecognized groups have been found to have standing to enforce treaty rights. *See* Pls.' Opp'n at 11. However, treaty rights are completely separate from establishing federal recognition. *See Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002) (noting that unrecognized tribe had standing to assert treaty hunting rights while recognizing that unrecognized tribe could not sue to obtain statutory benefits created by the federal government); *Green v. Babbitt*, 64 F.3d 1266, 1270 (9th Cir. 1995) (distinguishing between federal recognition and treaty status). In this case, the Plaintiffs' non-federally recognized tribe is not alleging any treaty right that it is attempting to enforce. Accordingly, this Court should grant Defendant's motion to dismiss because Plaintiffs lack standing to assert their claims.

**III.     Plaintiffs Fail to Identify a Valid Waiver of Sovereign Immunity.**

Defendant's Motion to Dismiss demonstrated that Plaintiffs failed to show that the United States has waived its immunity from suit. Plaintiffs' Opposition affirms that their alleged waiver of sovereign immunity is the APA. However, Plaintiffs' brief does not identify any "final agency action" being challenged in this case. Presumably, Plaintiffs base their challenge on either the 1975 *Maynor* decision or the Department of the Interior's alleged refusal to consider the Plaintiffs to be a federally recognized Indian tribe. Although Plaintiffs allege that they "have on many occasions petitioned the Secretary for tribal recognition," the Complaint alleges only one instance where the Department allegedly refused Plaintiffs' request: a 1989 letter from the Department of the Interior to Plaintiff Roy Maynor. Compl. ¶ 28. Plaintiffs argue solely that "because the Secretary continues to refuse to comply with *Maynor v. Morton*, it would be futile for Plaintiffs to file any more applications for recognition, and therefor [sic] Plaintiffs have exhausted their administrative remedies." Pls.' Opp'n at 15. Plaintiffs' argument, however, fails because neither the court decision or the 1989 letter constitute final agency action, as the APA defines that term. "For agency action to be 'final' and reviewable under the APA, it must generally 'mark the consummation of the agency's decisionmaking process' and either determine 'rights or obligations' or result in 'legal consequences.'" *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 800 (D.C. Cir. 2006) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). The APA refers to five categories of "circumscribed, discrete agency actions": "agency rule, order, license, sanction [or] relief." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) (quoting 5 U.S.C. § 551(13)). "Whether there has been 'agency action' or

'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006).  A court decision is clearly not an agency action, and would not fall within the five categories of "agency action," in any event.  The 1989 letter also is not final agency action.  As described in the Complaint, the letter details that following the 1975 *Maynor* decision, individuals from the Bureau of Indian Affairs ("BIA") met with Lawrence Maynor and the other surviving individuals that had been certified as Indian under the IRA.  Compl. ¶ 28.  According to the Complaint, at the meeting, the BIA described the benefits for which the individuals might be eligible, and ultimately provided those benefits.  *Id.*  The Complaint also alleges that the Department's letter stated that the 1975 *Maynor* decision did "not affect any group of Indians seeking recognition, including those to whom you refer to as the 'Tuscarora Nation of North Carolina,'" and that because the Tuscarora Nation of North Carolina was not a party to the 1975 *Maynor* decision, the court's decision did not affect the rights of that group.  *Id.*  The Complaint does not allege any part of this letter that can be construed as a final agency action within the meaning of the APA.  The letter merely describes the Department's conduct following the 1975 *Maynor* decision and states that the "Tuscarora Nation of North Carolina" was not affected by that decision.  It is well-established "'that the term [agency action] is not so all-encompassing as to authorize us to exercise judicial review over everything done by an administrative agency.'"  *Fund for Animals*, 460 F.3d at 19 (quoting *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004)).  "Much of what an agency does is in anticipation of agency action. Agencies prepare proposals, conduct studies, meet with members

of Congress and interested groups, and engage in a wide variety of activities that comprise the common business of managing government programs." *Id.* at 19–20. Nothing in the Complaint alleges that the 1989 letter has the hallmarks of finality: that it marked the end of the agency's decisionmaking process, determined rights or obligations, or resulted in legal consequences. *See Ctr. for Auto Safety*, 452 F.3d at 800. Accordingly, Plaintiffs have failed to state a cause of action under the APA. Plaintiffs apparently concede that neither the 1975 *Maynor* decision nor the letter would be final agency action, as they focus their argument on the alleged futility of requiring Plaintiffs to exhaust their administrative remedies. *See* Pl.'s Opp'n at 15–17; 18 (noting that "because the exhaustion of administrative remedies would be futile . . . Plaintiffs may proceed with this action without a final administrative ruling"). Their exhaustion argument is without merit, however. The D.C. Circuit has noted that the exhaustion requirement should be waived in only the most exceptional circumstances. *See Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs*, 714 F.2d 163, 168–69 (D.C. Cir. 1983). In general, requiring plaintiffs to exhaust their administrative remedies serves many purposes, including respecting agency procedures and providing a useful record for judicial consideration. *Qwest Corp. v. F.C.C.*, 482 F.3d 471, 475 (D.C. Cir. 2007) (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); *see also Woodford v. Ngo,* --- U.S. ----, 126 S. Ct. 2378, 2385 (2006)). Particularly in this case, where Plaintiffs' claim is amorphous, exhaustion would assist both the Court and the parties, as it would provide an administrative record upon which to base the Court's review. *See Boivin v. U.S. Airways, Inc.,* 446 F.3d 148, 155 (D.C. Cir. 2006) ("'And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record

9

for subsequent judicial consideration, especially in a complex or technical factual context.'")

(quoting *McKart v. United States*, 395 U.S. 185, 195 (1969)).

In addition, exhaustion is warranted in this case because of the political implications of
federal recognition. Federal recognition or acknowledgment[2] of Indian groups as Indian tribes
establishes a government-to-government relationship with the United States and is a prerequisite
to the protection, services, and benefits of the federal government available to Indian tribes. 25
C.F.R. § 83.2. This political relationship includes potential access to federal funding for health,
education, and other social programs, and the possibility of establishing casino gaming
operations. Federal recognition also means that an Indian tribe is entitled to the immunities and
privileges available to other federally recognized tribes by virtue of their government-
to-government relationship with the United States, as well as the responsibilities, powers,
limitations, and other obligations of such tribes. *Id.* Federal recognition of tribal status subjects
the Indian tribe to the same authority of Congress and the United States to which all other
federally acknowledged tribes are subjected. *Id.* As described thoroughly in Defendant's
Motion to Dismiss, the D.C. Circuit follows the view that federal determination of tribal status is
a political question inappropriate for judicial decision. *See* Def.'s Mem. at 13–14. Thus, the
appropriate course of action in this case would be for Plaintiffs to submit a formal application to
the Department and allow the agency to rule on such application. *See* 25 C.F.R. § 83.2
(describing process by which Department determines federal recognition). If Plaintiffs are

---

[2]The terms federal recognition and acknowledgment are used in this motion interchangeably.
The differences between the terms are not significant. Congress possesses the authority to
"recognize" an Indian tribe, while Interior "acknowledges" a group has continually existed as an
Indian tribe in accordance with its regulations. Both designations result in federal recognition.

dissatisfied with the Department's decision, they could bring suit at that time and this Court could review the administrative record compiled by the agency pursuant to the APA.

## IV.    Even if Plaintiffs Have Identified a Final Agency Action, Their Claims Are Barred by the Statute of Limitations.

Defendant's Motion to Dismiss demonstrated that, at best, Plaintiffs' claims accrued in 1989, well beyond the APA's six year statute of limitations. *See* Def.'s Mem. at 12–13. Plaintiffs' brief does not address the statute of limitations argument, except to state that "[t]he same argument defeats" Defendant's argument "that the statute of limitations bars Plaintiffs' claim." Pl.'s Opp'n at 19. It is not entirely clear what argument Plaintiffs refer to, but the preceding section of Plaintiffs' brief alleges the futility of exhausting their administrative remedies. Such an argument offers no defense to the statute of limitations. The statute of limitations begins to run when the cause of action is accrued. APA causes of action accrue when the "'right to resort to federal court is perfected'" or when "when all statutorily required or permitted agency review has been exhausted." *Impro Prods., Inc. v. Block*, 722 F.2d 845, 850 (D.C. Cir. 1983) (quoting *Oppenheim v. Campbell*, 571 F.2d 660, 662 (D.C. Cir. 1978)). In this case, Plaintiffs admittedly did not exhaust agency review, but even accepting their claim that doing so would have been futile, their cause of action accrued in 1989, at the latest. Thus, Plaintiffs' claim is barred by the statute of limitations.

## V.    This Court Does Not Have Jurisdiction Over Plaintiffs' Claims for Money Damages.

Although Plaintiffs allege that their "primary purpose is to enforce *Maynor v. Morton*," their Complaint requests "[d]amages in an amount in excess of $75,000 for the denial of rights, denial of benefits, taking of land, taking of property, and contempt and violation of the April 10, 1975 Order of this Court in *Maynor v. Morton*." Compl., Prayer for Relief ¶ 9; Pl.'s Opp'n at

11

20–22.  Plaintiffs also argue that their request for damages for the violation of the 1975 *Maynor*

decision is within the "inherent jurisdiction of this Court."  Pl.'s Opp'n at 21.  Defendant does

not dispute that jurisdiction in the district court generally is proper for APA claims and non-

monetary relief.  Defendant does dispute, however, that the Court has jurisdiction over this case,

where Plaintiffs have asked for damages in excess of the Court's $10,000 jurisdictional limit.

    Plaintiffs' cited case law does not demonstrate that this Court has jurisdiction.  *Kidwell v.*

*Dep't of the Army*, 56 F.3d 279 (D.C. Cir. 1995) deals with a situation where the plaintiff did not

explicitly seek monetary relief.  56 F.3d at 283–84.  Instead, the plaintiff sought a correction in

his pay grade, non-monetary relief which the court found may result in the future in monetary

benefits.  Those monetary benefits, however, "would not come from the district court's exercise

of jurisdiction, but from the structure of statutory and regulatory requirements governing

compensation when a servicemember's files change."  *Id.* at 285–86.  In this case, Plaintiffs have

explicitly requested monetary damages, and those benefits do not stem from statutory or

regulatory requirements.  Likewise, in *Bowen v. Massachusetts*, 487 U.S. 879 (1988), the

Supreme Court found that an equitable action for specific relief may be heard in the district

courts because "monetary relief" does not always equate to "money damages."  487 U.S. at

893–94.  The Court held that monetary relief — funds to which a statute allegedly entitles a

recipient — is sometimes available in the district court, whereas money damages — "money in

compensation for the losses, whatever they may be" that the plaintiff suffers from an alleged

injury from governmental action — are not.  *Id.* at 901.  In this case, however, Plaintiffs clearly

seek money damages in compensation for the alleged "denial of rights, denial of benefits, taking

of land, taking of property, and contempt and violation" of the 1975 *Maynor* decision.  Compl.,

Prayer for Relief ¶ 9.  Accordingly, this Court lacks jurisdiction over those claims and they should be dismissed.[3]

## CONCLUSION

For the reasons set forth above and in Defendant's Memorandum, Defendant respectfully requests that its motion to dismiss be granted and that Plaintiffs' Complaint be dismissed with prejudice.


Respectfully submitted this 24th day of May, 2007.


MATTHEW J. McKEOWN
Acting Assistant Attorney General

   s/ Devon Lehman McCune
DEVON LEHMAN McCUNE,
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
1961 Stout St.
Denver, CO  80294
303-844-1487
303-844-1350 (fax)
devon.mccune@usdoj.gov

Attorney of record,

OF COUNSEL:

JASON C. ROBERTS
Attorney- Advisor

---

[3]Although Plaintiffs offer to waive their monetary claims in excess of $10,000 in order to retain this Court's jurisdiction, Defendant requests that the monetary claims be dismissed with prejudice, as this Court lacks jurisdiction over Plaintiffs' entire case for the reasons set forth in this brief and in Defendant's Motion to Dismiss.

13

U.S. Department of the Interior
Office of the Solicitor
Division of Indian Affairs
1849 C Street, N.W., MS 6513
Washington, DC 20240
Tel.:    (202) 208-6526
Fax:    (202) 219-1791